A91A1066. MILES RICH CHRYSLER-PLYMOUTH, INC. et al.
v. MASS.
(411 SE2d 901)

SOGNIER, Chief Judge.
Maripat Mass brought suit against Miles Rich Chrysler-Plymouth, Inc. (MRCP) and Miles Rich alleging common law fraud, breach of contract, promissory estoppel, and intentional violation of the Georgia Fair Business Practices Act (FBPA), OCGA § 10-1-390 et seq., arising out of her attempt to purchase a 1987 Plymouth Grand Voyager. The jury found in favor of Mass on all claims. The trial court denied the motions for new trial and judgment notwithstanding the verdict made by Rich and MRCP, and they appeal.

1. We find no merit in appellants' claim that the trial court erred by failing to bifurcate the trial of this case pursuant to OCGA § 51-12-5.1 (d). Pretermitting the question whether appellee's cause of action arose on or after July 1, 1987, the effective date of the statute, OCGA § 51-12-5.1 (h), and even assuming the statute is applicable, the record reveals that appellants acquiesced in the trial court's action of submitting the issue of punitive damages to the jury together with the liability issues, see generally *Capes v. Bretz*, 195 Ga. App. 467, 469 (2) (393 SE2d 702) (1990), and requested the trial court to take the very action they now challenge by proffering a verdict form which proposed submitting the issues of liability and punitive damages together. No fraud or mistake having been alleged or shown, appellants have no basis for complaint in this regard. *Marsh v. White*, 185 Ga. App. 642, 645 (4) (365 SE2d 464) (1988).

2. Appellants contend error in the denial of their motion for new trial made on the basis that the trial court erroneously admitted evidence concerning complaints made by other disgruntled customers against MRCP. While appellants effectively concede the propriety of the trial court's ground for admitting this evidence, namely, to impeach appellants' discovery responses that no documents of complaints by customers to government agencies existed, appellants argue appellee used this evidence not to impeach but to inflame the jury and to introduce similar transactions before the jury.

The transcript reveals that during cross-examination of Rich, the discovery request and appellants' negative response were read to the jury and evidence of other complaints was introduced. Rich then explained appellants' negative discovery response on the basis that the complainants were not memorable. Appellee's counsel questioned Rich about the details of a few of the complaints, including one alleging Rich had obscenely and abusively ordered a customer out of his office. Upon objection, the trial court agreed with appellee that the questions were relevant to the impeachment of appellants because they enabled the jury to determine whether the complaints were or were not memorable. We find no abuse of the trial court's discretion in admitting the challenged evidence. See generally *Weaver v. Ross*, 192 Ga. App. 568, 570 (1) (386 SE2d 43) (1989).

3. Appellants contend the trial court erred by denying their motions for directed verdict, judgment n.o.v., and new trial on appellee's claims and by entering judgment on the jury's award of damages and attorney fees. Applying the any evidence standard to the case sub judice, see *Foreman v. Eastern Foods*, 195 Ga. App. 332, 333 (393 SE2d 695) (1990), the jury was authorized to find from the evidence that appellee visited appellant MRCP on May 10, 1987 and spoke with MRCP's sales representative, Lee Adams, about purchasing a 1987 Plymouth Grand Voyager with certain optional features. Appel-

lee testified that she told Adams she needed the van by midsummer at the latest because she had obligated herself to participate in a carpool for preschoolers. Many of the optional features she required were chosen specifically because of her carpool plans. Adams quoted her a price of $16,000 for the van.

Appellee testified that after comparing van prices at other dealerships, she returned to MRCP on May 16 and met with Adams. He confirmed the $16,000 price, and they discussed financing arrangements (particularly regarding appellee's eligibility for a special financing package being offered by Chrysler) and the trade-in of appellee's car. Adams produced a preprinted form entitled "Work Sheet Single and Invoice" on which he wrote his name and information about appellee, then filled in the form to reflect an order to Chrysler for a new 1987 Silver Grand Voyager LE with a list of the optional features appellee wanted. The document also set forth the total amount appellee would pay for the van after a trade allowance, various fees, and a down payment were calculated. Appellee testified she gave Adams a check for $500 as partial down payment and was told the van would be ready in four to six weeks. Appellee stated that after Adams photocopied the completed document, he gave appellee the unsigned copy and had her sign the original, which he kept.

Appellee testified that she telephoned Adams approximately four weeks later, in mid-June, to inquire about the van's status and was told that it had been shipped, but that he could not tell her the exact arrival date because MRCP's computer was down. The following six weeks appellee spoke several times with Adams and another MRCP employee regarding specifics of the financing and trade-in arrangements, with Adams continuing to represent that the van was scheduled to arrive shortly. At no point during these conversations was appellee informed that Chrysler had ceased manufacturing the 1987 model of the van she had ordered.

Near the end of August, appellee or her husband, Richard Mass, learned in a series of telephone calls that Adams was no longer employed at MRCP; that Tom McKenzie, MRCP's sales manager, had found the file kept on appellee which contained the $500 check and the credit report, but not the work sheet; and that after double checking, McKenzie had determined no van had been ordered for appellee and that Adams had lied about the van arriving soon. Appellee then went to MRCP and, in order to convince her that her van had not been ordered, McKenzie showed appellee how Adams could have easily verified her order and the arrival date of the van under the computer printout system they used. McKenzie showed her two other vans on the lot, which he offered to sell to her for $16,000. The vans had features appellee did not want and lacked others she required; when she inquired whether one necessary option could be installed on

an available van, she testified that McKenzie discouraged her by representing that the option would not operate properly when dealer-installed.

When appellant Rich joined appellee and McKenzie in the latter's office, appellee was introduced to him as "the lady who has the problem with the [van]." Rich informed her there was a fully loaded 1988 Grand Voyager on the lot which he could offer her for an extra $1,500 to $2,000, and that the credit check they had done on appellee and her husband indicated they were "completely covered" for the additional amount. She testified that when she asked whether they could locate a 1987 model with the features she wanted at another dealership, McKenzie told her he had made a search but could not find any, and that McKenzie stated to Rich that appellee had already been told that the options she wanted would not function properly if installed by MRCP on one of the available vans. Appellee stated she felt that Rich and McKenzie were "putting the squeeze" on her because they knew she had to have the van for the carpool and they were taking advantage of her situation to pressure her into buying a more expensive vehicle. She also testified that Rich acknowledged the van had not been ordered but told her he could have "[gotten appellants] off the hook" by claiming the van had been ordered but that Chrysler refused to build it.

Mass testified that when he telephoned Rich after hearing from appellee, in contrast to Rich's statements to appellee, Rich told him the van had been ordered but claimed that Chrysler had "refused to do the deal." When Mass (who appellants were aware was an attorney) informed Rich that McKenzie had said otherwise, Rich responded that because there was no offer, acceptance, or consideration, "I don't owe you a thing." Mass testified that Rich became verbally abusive and ended the conversation by abruptly hanging up on Mass. Appellee testified that, unaware of this conversation, she was out in the showroom with McKenzie when Rich came "screaming" out of his office and ordered her off the premises, humiliating her in front of all the people in the showroom. She stated that she was so shaken and embarrassed that she was reduced to tears.

Testimony established that after complaint was made to the manufacturer about the events at MRCP, a few other vans at nearby dealerships were located and offered to appellee, but she rejected them because they were used or lacked the options she required. Appellee, who had to rent a van to meet her carpool obligations, soon purchased a 1988 model Grand Voyager for $16,604. At trial, she submitted evidence of the cost of renting the van, the difference in financing packages on the MRCP van and the van she purchased, and certain other expenses. The jury returned a verdict in her favor for $1,000 in actual damages.

(a) We find no error in the trial court's denial of appellants' motion for directed verdict on appellee's FBPA claim. The jury was authorized to find that appellee was led to believe that she had ordered a vehicle and that the vehicle as ordered would soon arrive; that after misrepresenting the arrival date of the vehicle for over three months, appellants presented appellee with the information that no vehicle had been ordered, no similarly priced vehicles could be adequately modified, and no other dealership had the vehicle available; and that, after having run a credit check on appellee to ascertain she could afford a more expensive vehicle, appellants tried to pressure her into buying that more expensive vehicle. Thus, the jury could have found that the facts of this case presented a minor variation on the classic "bait and switch" scheme. See *Greenbriar Dodge v. May*, 155 Ga. App. 892 (273 SE2d 186) (1980). Contrary to appellants' arguments, the facts of this case clearly come within the FBPA requirement that the offensive activity have taken place within the context of the consumer marketplace. See *Zeeman v. Black*, 156 Ga. App. 82-84 (273 SE2d 910) (1980).

Appellant Rich argues the evidence was not sufficient to show that he intentionally violated the FBPA so as to support the verdict against him individually.[1] "The intentional violation as contemplated by the FBPA is a volitional act constituting an unfair or deceptive act or practice conjoined with culpable knowledge of the nature (but not necessarily the illegality) of the act." *Colonial Lincoln-Mercury v. Molina*, 152 Ga. App. 379, 383-384 (11) (262 SE2d 820) (1979). Given the evidence of Rich's involvement in the attempt to pressure appellee into purchasing the more expensive van, we do not agree with Rich that the evidence was insufficient. Finally, we find no merit in appellants' argument that the letter sent by certified mail to Rich at MRCP, which included, inter alia, a detailed narrative of the unfair and deceptive acts perpetrated upon appellee by Rich and other MRCP employees and a specific allegation that the conduct of MRCP violated the FBPA, together with a citation to the predecessor statute to OCGA § 10-1-399 (Ga. Code Ann. § 106-1210 (b)), was legally insufficient under OCGA § 10-1-399 (b). See *Plaza Pontiac v. Shaw*, 158 Ga. App. 799, 800 (2) (282 SE2d 383) (1981).

Although appellee adduced evidence that she had incurred over $67,000 in attorney fees in connection with her FBPA claim, the trial court found appellee was entitled to recover reasonable attorney fees and expenses of litigation in the total amount of $36,362.90. See

---

[1] We note that the trial court entered judgment on the jury's finding of intentional violation of the FBPA only against MRCP, holding Rich jointly and severally liable thereunder contingent upon MRCP's failure to pay the damages awarded in the judgment. For the sake of judicial economy, however, we will consider Rich's arguments in this opinion.

OCGA § 10-1-399 (d). Given the statutory language that upon a finding of an intentional violation of the FBPA, the injured party "shall, in addition to other relief provided . . . *and irrespective of the amount in controversy,* be awarded reasonable attorneys' fees and expenses of litigation," (emphasis supplied), id., we find no merit in appellants' argument that the attorney fees awarded by the trial court were excessive or improper because appellee proved less than $2,000 in actual damages.

(b) We find no error in the trial court's denial of appellants' motions on appellee's fraud claim. "The five essential elements required to prove fraud are: a false representation made by the defendant, scienter, an intention to induce the plaintiff to act or refrain from acting in reliance upon the defendant's representation, justifiable reliance by the plaintiff, and damage to the plaintiff as a proximate result of the representation. [Cit.]" *Bramblett v. Bass,* 189 Ga. App. 10, 11 (2) (375 SE2d 106) (1988). The jury was authorized to find that an MRCP employee knowingly misrepresented to appellee that the van she wanted was available, had been ordered for her, and would be arriving shortly; that the misrepresentations regarding the momentary arrival of the nonexistent van were made over a three month period with the intent to induce appellee to refrain from going elsewhere to purchase another van or, because the misrepresentations were made with the knowledge of appellee's pressing need for a van, that they were made with the intent of inducing appellee to purchase a more expensive van; and that appellee, despite due diligence on her part, sustained damages as a result of appellants' fraudulent acts. "Whether the operative facts and circumstances establish actionable fraud 'is a matter peculiarly within the province of a jury to determine.' [Cits.]" *Marshall v. W. E. Marshall Co.,* 189 Ga. App. 510, 513 (6) (376 SE2d 393) (1988). We find there was sufficient evidence of the five elements of fraud to support the jury's award against both appellants.

Although appellants argue there was no fraud because the misrepresentations made to appellee constituted promises to perform in the future, upon which appellee could not rely, citing *Motors Ins. Corp. v. Morgan,* 117 Ga. App. 654, 656 (161 SE2d 382) (1968), "[w]here promises as to future events are made with the present intention not to perform or where the utterer knows the future event will not take place, actionable fraud can arise. [Cit.]" *Marshall,* supra. We do not agree with appellants that the misrepresentations could not be fraud because the underlying contract (the work sheet order form) was unenforceable as against either party because it was not signed. See *Alston v. Brown Transport Corp.,* 182 Ga. App. 632, 633 (1) (356 SE2d 517) (1987). The contract was enforceable as to appellee who signed the order form, and the jury was authorized to conclude from the evidence that appellants routinely fulfilled obligations

under similar forms used in other sales transactions even without signing or initialling those contracts. Furthermore, contrary to appellants' assertion, it is apparent that those misrepresentations made subsequent to the promised placing of the order, to the effect that the van she ordered had actually been manufactured and was in transit, did not constitute statements promissory in their nature as to future acts upon which she was not entitled to rely. Compare *Motors Ins. Corp.*, supra.

(c) The jury returned a verdict of $50,000 in punitive damages, which appellants assert constituted an excessive fine under *Colonial Pipeline Co. v. Brown*, 258 Ga. 115 (365 SE2d 827) (1988). We do not agree with appellants that the evidence in this case demonstrated that their actions were mere innocent mistakes comparable to the passive negligence in *Colonial Pipeline Co.* Rather, the evidence supports the jury's finding that appellants committed actual fraud upon appellee and acted intentionally to violate the FBPA, for which exemplary damages are statutorily authorized. See OCGA § 10-1-399 (a); *Colonial Lincoln-Mercury*, supra at 382 (7). Since under both *Colonial Pipeline Co.*, supra at 122 (5), and OCGA § 51-12-5.1 (b) punitive damages are authorized where the evidence establishes that the tortfeasor's actions showed willful misconduct or fraud, the trial court did not err by entering judgment on the jury's award of punitive damages. See *John D. Robinson Corp. v. Southern Marine &c.*, 196 Ga. App. 402, 405-406 (4) (395 SE2d 837) (1990).

(d) There was sufficient evidence of fraud and intentional violation of the FBPA to support the actual and punitive damages awarded by the jury and the attorney fees and treble damages awarded by the trial court pursuant to the FBPA. Although appellants do assert that appellee's fraud claim must fail because she affirmed the contract, citing *Hay v. McKinley*, 154 Ga. App. 288, 289 (1) (267 SE2d 892) (1980), the record established that appellee had not elected to affirm the contract but rather was pursuing inconsistent remedies against appellants, see *Price v. Mitchell*, 154 Ga. App. 523, 524 (268 SE2d 743) (1980), which she could do since she was not required to elect her remedy prior to submission of the case to the jury. *Waller v. Scheer*, 175 Ga. App. 1, 5 (3) (332 SE2d 293) (1985). However, although appellants do not enumerate it as error, it appears that after the jury rendered an inconsistent verdict by finding in favor of appellee on all four causes of action, appellee did not make the required election and the trial court entered judgment on the verdict as rendered. While arguably the jury's finding in favor of appellee on the breach of contract claim was not inconsistent with the verdict on the fraud claim given that the verdict on the latter claim may be based upon misrepresentations other than as to the existence of the contract, see *Long v. Marion*, 182 Ga. App. 361, 366 (5) (355 SE2d

711) (1987), even construing the evidence and every presumption and inference in favor of the verdict it is not possible to reconcile the verdict on the breach of contract claim and the promissory estoppel claim. See *Christensen v. Intelligent Systems &c. Partnership*, 197 Ga. App. 778, 779 (1) (399 SE2d 495) (1990) (cause of action under doctrine of promissory estoppel available when defendant not liable for breach of contract).

The inconsistency in the verdict was not enumerated as error by appellants nor argued in any cognizable form to this court or the trial court. The issue thus cannot be considered on appeal. *Venture Design v. Original Appalachian Artworks*, 197 Ga. App. 432, 434 (3) (398 SE2d 781) (1990). Given that we can uphold the verdict based solely on the evidence of fraud and intentional violation of the FBPA without reference to other claims inconsistent therewith, we need not determine whether the evidence was sufficient to support the remaining claims.

*Judgment affirmed. McMurray, P. J., concurs. Andrews, J., concurs in the judgment only.*

DECIDED OCTOBER 31, 1991.

*Macey, Wilensky, Cohen, Wittner & Kessler, Mark L. Golder, Susan L. Howick*, for appellants.
*Allen R. Mass*, for appellee.