A92A0555. RIVERGATE CORPORATION v. McINTOSH.

(421 SE2d 737)

Andrews, Judge.

On March 9, 1986, Plaintiff J. W. McIntosh went to Sandy Springs Toyota and found a truck in which he was interested, which he discussed with a salesman. The salesman and McIntosh discussed both purchasing and lease arrangements on the vehicle and the parties dispute which arrangement McIntosh agreed to.

In any case, McIntosh signed a document entitled "Closed End Vehicle Lease Agreement and Disclosure Statement," which clearly states that the truck would be leased to him. McIntosh admits that he never read that document.

The record contains two depositions of McIntosh and an affidavit. His testimony regarding reading the lease documents is as follows:

"Q: Did you read it before you signed it?

"A: I did not. I had an agreement with Mr. Mealey, and I thoroughly at that time trusted him, thought he was trustworthy, and I thought he was going to — I didn't know, I didn't even know anything about a lease. A lease was never mentioned.

"Q: You then did not know that you were signing what?

"A: A lease. I thought it was [sic] I was signing a sales agreement, and I waited for several days before I contacted him before I ever, before I ever looked at that. When I looked at that, that's when I called him and went back out there to try to get him to straighten it out.

"Q: So until you looked at this document sometime after the delivery of the vehicle, you didn't know you'd entered into a lease?

"A: I did not, I did not."

Further testimony was:

"Q: Why didn't you read it when you signed it?

"A: I've asked myself that question a thousand times. If I'd have read it when I signed it, I never would have had that boy follow me home and gave him $5,000. I'd have told him no deal right there, be-

cause I would have went for nothing like this. He was supposed to be financing the deal at ten and a half percent.

"Q: So if you had looked at it, read it, you would have seen that it was a lease, right?

"A: Right.

"Q: And you wouldn't have entered into it?

"A: Never.

"Q: And you wouldn't have made any $5,000 down payment?

"A: No."

Further testimony was:

"Q: So, basically your contention in this suit is that you were deceived into entering into a lease agreement?

"A: That's right.

"Q: That you didn't intend to enter into it?

"A: Absolutely had no intention of entering into a lease agreement.

"Q: It's embarrassing to you, isn't it?

"A: It is, absolutely.

"Q: Because you know you could have prevented it if you had just read the lease.

"A: If I had just read the lease."

Although McIntosh claimed the finance office was too dark for him to be able to read the documents, he admitted that no one prevented him from examining the documents, and that no one prevented him from taking the documents away from the office if he had wanted to. McIntosh admitted that his son, who accompanied him, did not attempt to examine the document either.

After signing the lease agreement, the salesman followed McIntosh to his home to collect the down payment. It is undisputed that McIntosh paid $5,000 to the salesman. Although he did not receive a receipt for it on that date, he received a receipt months later at the request of his attorney. The lease documents state "N.A." beside the space allowed for "Down Payment" and "N.A." beside the space for "Capitalized Cost Reduction." Nonetheless, there is no clear evidence that McIntosh's payment was not figured into the lease agreement. At his deposition, McIntosh conceded that he was not sure of the final purchase price of the vehicle and that the salesman stated that the price was "almost $16,000." McIntosh stated: "so I based it on $16,000 and I figured $16,000 less the $5,000 I was going to pay him down less the $2,950 he allowed me. . . ." He continued: "I thought he was just financing the balance. I'd have been an absolute fool to obligate myself for $11,000 and 48 notes at $234.56, which amounts to over $11,000 and $5,500 more to buy the truck back after it was paid for." McIntosh was then asked: "But that's what you did, isn't it?" He answered: "That's what I did."

Despite this testimony, in an affidavit which was prepared almost three years after his November 1987 deposition, which was to be used in opposition to defendant's motion for summary judgment, McIntosh was more specific. In that document, he swore that the salesman told him that with his down payment, value for trade-in, and the demonstrator discount "Sandy Springs Toyota would finance the balance of approximately $8,050 plus tax at 10 and 1/2 percent." He further swore in his affidavit that he confirmed with the salesman that "the cost of the truck would be approximately $13,050 plus tax. I also confirmed with Mr. Mealey that, once he received the down payment of $5,000, the balance due would be approximately $8,050 plus tax."

About one month after this transaction, McIntosh reviewed the documents for the first time and noticed that he had leased and not bought the truck. Nevertheless, over the next four years, he made 48 monthly payments to "Omni World Leasing" pursuant to the lease agreement and then paid the residual amount of $5,508 to obtain title to the truck.

On June 22, 1987, McIntosh filed his action for common law fraud and violation of the Fair Business Practices Act ("FBPA"). He dismissed that case without prejudice and refiled the instant action in October 1989, again alleging violation of the Fair Business Practices Act and common law fraud. In the pretrial order McIntosh also claimed breach of contract.

Sandy Springs Toyota filed a motion for summary judgment which was denied. Based on that denial, it filed an application for interlocutory review which we granted.

Sandy Springs claims that the trial court erred in denying its motion for summary judgment in six ways. Pretermitting the issues of whether McIntosh was barred from claiming fraud based on affirmance on the contract, and issues regarding whether McIntosh complied with the procedural requirements for filing an action under OCGA § 10-1-399 et seq., we find that the trial court improperly denied the motion for summary judgment since the undisputed facts established that McIntosh did not read the contract he signed and that his claims are barred since, as a matter of law, there was no reasonable reliance.

Basically McIntosh's suit rests on his claim that he did not receive credit for the $5,000 down payment, and his contention that he was misled into signing the lease documents either through promises that the documents would be redrafted to reflect a purchase and down payment, or through the salesman's misrepresentations that the documents he had signed were sales documents.

In holding that summary judgment regarding the plaintiff's FBPA claim was proper, the court in *Castellana v. Conyers Toyota*, 200 Ga. App. 161, 164 (2) (407 SE2d 64) (1991), stated:

"It is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears. There being no such prohibition, these contracts are enforceable.

"Fraud which constitutes a ground for voiding the contract under OCGA § 13-5-5, must be fraud which induced the parties to enter the contract. . . . [I]n the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations. . . . Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations. . . .

"A prerequisite to stating a claim for relief under the Fair Business Practices Act is the commission of some unfair act or deceptive practice, from which the Act is designed to protect the public. OCGA § 10-1-391 (a). In the absence of a confidential relationship a party may not rely and act on the misrepresentations of an opposite party as to the contents of a written instrument where the party signing can read and where no artifice or fraud is practiced which prevents the party signing from reading the instrument. Having failed to establish any unfair or deceptive practice by [Sandy Springs Toyota], the purchaser's claim under the FBPA is likewise foreclosed.

"The construction of a contract is a matter of law for the court under OCGA § 13-2-1, particularly where, as here, the terms are unambiguous. It is thus a matter peculiarly well suited for adjudication by summary judgment, which in this case was proper." (Punctuation and citations omitted.) *Castellana,* supra at 164-165. See also *Heidt v. Potamkin Chrysler-Plymouth,* 181 Ga. App. 903, 904 (354 SE2d 440) (1987); *Credithrift of America v. Whitley,* 190 Ga. App. 833 (380 SE2d 489) (1989). Our inquiry into the element of reliance is the same with respect to McIntosh's common law claims. See generally *Hubert v. Beale Roofing,* 158 Ga. App. 145 (279 SE2d 336) (1981).

The lease agreement here was clearly labeled a "lease agreement" for the lease term of 48 months. The document was signed next to the space labeled "lessee," and initialed by McIntosh. Throughout the document the fact that ownership of the vehicle remained with Sandy Springs Toyota is apparent. As McIntosh himself admits, if he had read the document, he would have understood that the transaction was for the lease of the vehicle, not for a sale. Thus, both McIntosh's fraud and FBPA claims based on allegations that he was misled by the salesman with regard to the nature of the transaction are without merit.

Further, McIntosh's claims regarding the down payment amount are without merit. First, despite the fact that McIntosh thought that

the documents would be "reworked" to reflect his payment, there is no indication from the documents themselves that this was the case. In fact, the lease agreement contains a clause which states: "This lease contains the entire agreement between you and us. There are no other agreements between you and us except those included in writing in this Lease. No change or other agreement will be binding unless in writing and signed by you and us." Further, by his own admission, McIntosh concedes that he did not find out the price of the vehicle on the date that he signed the lease agreement and that he "assumed" the $5,000 would bring the total cost of the automobile down by that amount. His more specific affidavit which claims that the $5,000 payment was not calculated into the lease agreement and states explicit figures, being contradictory testimony, which contains no explanation of the inconsistency, will be construed against him. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986); *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428 (2) (408 SE2d 443) (1991).

"[T]he alleged misrepresentation in the case sub judice does not relate to the underlying quality or attributes of any product that appellee sold, which misrepresentation a prospective purchaser might, even in the exercise of proper diligence, fail to discover. [Cits.] Instead, the alleged misrepresentation deals with the underlying terms of the transaction which were specifically addressed in the signed documents evincing the transaction. The alleged misrepresentation is contrary to the express terms of those written documents." *Heidt*, supra at 904; compare *Haralson v. Pope Chevrolet*, 180 Ga. App. 650 (3) (350 SE2d 255) (1986). The payments which McIntosh owed were clearly delineated under the agreement he signed and his claim that the down payment represented a subsequent agreement is without merit. There was no evidence in the record before us to constitute fraud or to constitute a violation of the FBPA. Accordingly, it was error to deny the motion for summary judgment.

*Judgment reversed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JULY 8, 1992 —
RECONSIDERATION DENIED JULY 27, 1992 — 

*Goldner, Sommers, Scrudder & Bass, Henry E. Scrudder, Jr., Alfred A. Quillian, Jr.,* for appellant.
*Fortson & White, John A. Howard,* for appellee.