A94A2111, A94A2112. BARANCO, INC. v. BRADSHAW;
and vice versa.
(456 SE2d 592)

ANDREWS, Judge.
On December 11, 1989, Lita Bradshaw filed a complaint against Baranco, Inc., d/b/a Baranco Acura ("Baranco") setting forth one count of fraud and one count alleging violation of the Georgia Fair Business Practices Act. The case was tried to a jury and the DeKalb State Court dismissed the Fair Business Practices count. The jury returned a verdict on the fraud count in favor of Bradshaw. Final judgment was entered for $7,000 actual damages plus prejudgment inter-

est, attorney fees of $10,000, punitive damages of $19,170, and court costs. In Case No. A94A2111, Baranco appeals; Case No. A94A2112 is Bradshaw's cross-appeal.

There is little dispute about the facts. Viewing the evidence in the light most favorable to the verdict, it was that Bradshaw test drove an Acura Integra at the Baranco dealership in the afternoon of August 10, 1989. She told the car salesman, Marion Kelly, that she was interested in leasing the car. She stated that she would obtain the lease through her bank, First Atlanta Bank.

To facilitate the deal, Kelly had Bradshaw sign several documents including: a purchase agreement, an agreement to provide insurance for the vehicle, a "non-leased vehicle odometer disclosure statement," a power of attorney to obtain title in her name, and a Ford Motor Credit application. The first purchase agreement contained some inaccuracies and Bradshaw was asked to sign a second form. Kelly testified at trial that Baranco's standard practice was to use the purchase agreement form for leases, as well as for sales. Baranco's finance manager, Michael Hale, told Bradshaw that despite the ongoing lease discussions, the documents she signed were required in case of an audit. Bradshaw admitted that she knew what she was signing when she signed the documents.

In order to hold the vehicle, Bradshaw gave Baranco a check for $7,000. Hale told Bradshaw that the check was earnest money and would not be cashed. He also told her that the check would be returned if her lease with First Atlanta was not approved. On the basis of the credit application, Kelly then obtained a credit report on Bradshaw. That report indicated that because of insufficient credit, the loan request was declined.

The record contains the corrected purchase agreement, which indicates that the total purchase price of the vehicle, including tax and other incidentals was $19,170. That document indicates that the total down payment was $7,000 and that the outstanding balance on the vehicle was $12,170.

The next morning, August 11, Bradshaw consulted her banker and was told that she could not qualify for a lease. Bradshaw testified that the banker told her that "she might be able to work out something that would be similar to a lease, and [she] didn't discuss it much further than that." Bradshaw recalled that the name of the arrangement was "[b]alloon financing; something to that effect." Bradshaw admitted that at this point, she knew that she could not get a lease from her bank. At that time, the banker also advised Bradshaw that her $7,000 check to Baranco had been cashed. Bradshaw testified that upon learning this she was very angry since she had been assured that it would not be cashed. She then filled out a loan application with the bank for the outstanding amount due on the car.

Later that day, Bradshaw went back to Baranco and was told that her check was cashed as an oversight. Bradshaw explained that she was still trying to work out a lease. She then went to an insurance agency, filled out the paperwork for a six-month policy on the car, and paid for that policy.

That same night Bradshaw returned to Baranco and showed proof of insurance. Hale told her that she could not take delivery of the car unless she wrote a second check for the balance. Accordingly, she wrote a check for $12,170. Because she did not want the check cashed, Hale wrote a note which stated: "Check #005 for $12,170 is for swap only of 1st Atlanta funds." At this point, Bradshaw believed that the transaction was complete. She drove the car off the lot and continued to drive it for the following six days.

On August 16, 1989, Bradshaw learned that her loan application would be approved by the bank, but that she would be required to put up additional collateral and that the $7,000 would be used as a down payment. Bradshaw instructed the bank to issue a stop payment on the check for $12,170 and to withdraw her loan application. She returned to Baranco and asked to return the car for her $7,000; Baranco declined. She left the vehicle on the premises.

This suit followed.

### Case No. A94A2111

1. In its first enumeration of error, Baranco claims that the trial court erred by failing to grant its motions for directed verdict, for judgment n.o.v., and for a new trial since Bradshaw did not justifiably rely on any alleged misrepresentation. It contends that in the absence of this critical element, the fraud action was fatally defective. See generally OCGA § 51-6-2.

Bradshaw's fraud claim is based on two alleged misrepresentations. First, she claims that the purchase agreement that Baranco used was fraudulent, in that it was clear that Bradshaw only wanted to lease the car. Bradshaw claims that Baranco induced her to sign this document despite knowing that she wanted to lease the vehicle. Secondly, Bradshaw contends that Baranco misrepresented to her that it would not cash her $7,000 check and that the check was being held for "auditing purposes," when Baranco intended to cash it.

We conclude that, as a matter of law, Bradshaw was not deceived by the alleged misrepresentations since she had knowledge of the alleged falsity prior to completing the transaction. See *Forsyth v. Jim Walter Homes,* 177 Ga. App. 353 (1) (339 SE2d 350) (1985). Bradshaw's actual knowledge of the alleged falsity establishes that her reliance was unjustifiable. "Misrepresentations are not actionable unless the hearer was justified in relying on them in the exercise of common

prudence and diligence. [Cits.]" *Doanes v. Nalley Chevrolet,* 105 Ga. App. 846, 848 (1) (125 SE2d 717) (1962).

Bradshaw admitted that at the time she drove the car off the lot she was aware both that the $7,000 check had been cashed and that she would not be able to get a lease. Bradshaw understood that the bank would provide financing "similar" to a lease. Unlike most fraud actions, here Bradshaw knew all of the relevant facts prior to buying the car. The only change regarding the situation between August 11 and August 16 was that the bank supplied concrete details of the loan, which turned out to be unacceptable to Bradshaw. This turn of events does not convert Baranco's actions into fraudulent ones. See generally *Hicks v. McLain's Bldg. Materials,* 209 Ga. App. 191, 193 (2) (433 SE2d 114) (1993).

Given these facts, the trial court's denial of the motion for directed verdict was erroneous. Because of our conclusion, we do not reach the issue of whether the documents which Bradshaw signed also bar her recovery. See generally *Rivergate Corp. v. McIntosh,* 205 Ga. App. 189 (421 SE2d 737) (1992).

2. Given our conclusion in Division 1, we need not address Baranco's second enumeration.

### Case No. A94A2112

In Bradshaw's cross-appeal, she contends that the trial court erred in directing a verdict as to her Fair Business Practices Act claim. The trial court concluded that the case did not involve the "consuming public interest" but was a "private transaction."

As in common law fraud cases, a claimant under the Fair Business Practices Act must show justifiable reliance. See *Heidt v. Potamkin Chrysler-Plymouth,* 181 Ga. App. 903, 904 (354 SE2d 440) (1987). As discussed above, no such reliance was shown here. For this and other reasons, we find no merit to Bradshaw's argument.

*Judgment reversed in Case No. A94A2111. McMurray, P. J., Birdsong, P. J., Johnson, Smith and Ruffin, JJ., concur. Beasley, C. J., Pope, P. J., and Blackburn, J., dissent.*

*Judgment affirmed in Case No. A94A2112. Beasley, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur.*

BEASLEY, Chief Judge, dissenting.

I respectfully dissent to the majority's reversal of the trial court's denial of Baranco's motion for directed verdict in Case No. A94A2111.

This reversal is premised upon the holding that Bradshaw completed the transaction by writing Baranco the $12,170 check after ac-

quiring knowledge of the falsity of Baranco's alleged misrepresentations. However, Bradshaw testified that when she wrote the $12,170 check, Baranco's finance manager, Hale, told her that it was for auditing purposes only and that if financing suitable to her needs was not arranged, she could bring back the car and get all of her money back. Therefore, there is a material issue of fact on the question of whether Bradshaw completed the transaction between herself and Baranco when she wrote the $12,170 check.

In its first enumeration, Baranco argues that any reasonable purchaser should have realized that execution of the purchase and sale documents, together with the other events that transpired in this case, would result in a legally binding purchase and sale transaction. However, Baranco has made no showing that there was a legally binding purchase and sale transaction or that the terms of the purchase and sale documents render Bradshaw's reliance upon Baranco's misrepresentations unjustifiable as a matter of law. Compare *Doanes v. Nalley Chevrolet,* 105 Ga. App. 846, 848 (1) (125 SE2d 717) (1962) (relied upon by the majority).

In its second enumeration, Baranco argues that the evidence demands a finding that Bradshaw waived any fraud by accepting delivery of the vehicle with actual knowledge that the lease had been rejected. The evidence does not demand any such finding. Bradshaw's evidence was that her purchase of the car was contingent upon her obtaining suitable financing in lieu of the lease.

Whether the facts and circumstances establish false representations by Baranco and justifiable reliance by Bradshaw is peculiarly within the province of the jury. *Miles Rich Chrysler-Plymouth v. Mass,* 201 Ga. App. 693, 698 (3) (b) (411 SE2d 901) (1991). For example, whether Baranco's statement to her, that the unauthorized depositing of the $7,000 check was a "mistake," was honest or a subterfuge geared to effecting a sale, is a matter of credibility. There is also evidence from which it could reasonably be inferred that, despite what Baranco told Bradshaw about holding the $12,170 check, it intended to deposit it. Bradshaw testified that about an hour after she stopped payment, Baranco's Mr. Jones said to her: "Don't you know, by the way, that it's against the law in Georgia to stop payment on a check." The jury could find that the representations made by Baranco about the nature of the transaction as it progressed over time, about the reason for requiring Bradshaw's signature on sale documents, about the purpose and use to be made of the checks, were false and deviously misleading, a guise to effect a sale.

"Fraud is subtle in nature, and 'slight circumstances may be sufficient to carry conviction of its existence.' [Cits.] . . . Actionable fraud may be proved by circumstantial evidence. [Cit.] Whether the operative facts and circumstances establish actionable fraud 'is a mat-

ter peculiarly within the province of a jury to determine.' [Cits.]" *Marshall v. W. E. Marshall Co.*, 189 Ga. App. 510, 513 (6) (376 SE2d 393) (1988). Except in "plain and indisputable cases," so are questions of "the truth and materiality of representations made by a defendant, and whether the plaintiff could have protected himself [or herself] by the exercise of proper diligence." *Brown v. Techdata Corp.*, 238 Ga. 622, 625 (234 SE2d 787) (1977).

The verdict was reached after a full presentation of evidence concerning the dealings between the parties and a complete charge to the jury on the principles of fraud in the context of contract. There being evidence in support of the jury's verdict, an affirmance is required under well-recognized legal principles of appellate review. See, e.g., *Thompson v. Hardy Chevrolet-Pontiac-Buick*, 203 Ga. App. 499, 503 (3) (417 SE2d 358) (1992).

I am authorized to state that Presiding Judge Pope and Judge Blackburn join in this dissent.

DECIDED FEBRUARY 15, 1995 —
RECONSIDERATION DENIED MARCH 31, 1995 — ▆▆▆▆▆▆

*George L. Barron, Jr., Schulten & Ward, William S. Schulten, David L. Turner,* for appellant.
*Jason M. Braswell, R. Glen Galbaugh,* for appellee.