Kathy JONES, Plaintiff,

v.

**USA PETROLEUM CORPORATION and Richard Brown, Defendants.**

Kristi S. WILSON, Plaintiff,

v.

**USA PETROLEUM CORPORATION and Richard Brown, Defendants.**

Nos. CV 497–164, CV 497–219.

United States District Court, S.D. Georgia, Savannah Division.

Sept. 21, 1998.

Michele M. Henderson, Dena Walker Gardner, Henderson & Henderson, Richmond Hill, GA, Michael P. Ludwiczak, Richmond Hill, GA, for Kathy Jones.

Patricia Tanzer Paul, Oliver, Maner & Gray, Savannah, GA, Stephen D. Savitz, Kathryn Thomas, Gignilliat, Savitz & Bettis, Columbia, SC, for USA Petroleum Corp.

James D. Kreyenbuhl, Mason White, Brennan, Harris & Rominger, Savannah, GA, for Richard Brown.

## ORDER

EDENFIELD, District Judge.

Plaintiffs Kathy Jones and Kristi Wilson brought separate sexual harassment actions against their former employer, defendant USA Petroleum (USAP). USAP now moves for summary judgment in each case, as does co-defendant Richard Brown, a USAP employee. Both plaintiffs allege a similar course of conduct by the defendants—occurring during roughly the same time period—as the basis for their respective claims.[1] The Court therefore will address defendants' summary judgment motions in this omnibus order, applying the summary judgment standards exhaustively detailed in *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) and *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir.1996).

### I. BACKGROUND

#### A. Facts

The relevant events in both cases took place in the summer of 1996 at USAP's Station # 308 (the Station) in Hinesville, Georgia. The Station consists of several gas pumps and a small (7'x7') cashier's booth. Jones dep. at 79–81. A cashier sits inside the booth, which contains snack food stands and refrigerated coolers. *Id.* Attached to the booth is an employee restroom. Both plaintiffs worked the night shift at the station, leaving them alone for most of their shift. Jones dep. at 77; Wilson dep. at 44.

Toward the end of each plaintiff's shift, however, Brown, as station manager, would come in to prepare paperwork for the next day. Jones dep. at 96; Wilson dep. at 44–45. This meant that Brown shared the limited booth space with each plaintiff for about one hour each morning. *Id.* It was primarily during this period, plaintiffs allege, that Brown sexually harassed them. Jones dep. at 97; Wilson dep. at 46.

USAP adopted a sexual harassment policy in 1995. Brown dep. at 35. All employees are

---

1. Both Wilson and Jones are represented by the same counsel, and near duplicate filings exist in both cases. However, no party has moved for F.R.Civ.P. 42(a) consolidation.

required to read and sign a form documenting that policy and its associated grievance procedure. *Id.* at 35–36. Among other things, the form reflects that USAP "will not tolerate any sexual harassment," lists proscribed conduct[2] and provides a sexual harassment reporting procedure. *Id.*, exh. 2.

Plaintiff Wilson began working at the Station as a cashier on 7/5/96 and quit three weeks later on 8/2/96. Wilson dep. at 62. During this period, she alleges that Brown subjected her to offensive physical conduct (intentional rubbing up against her while in the cashier's booth) and various verbal comments of a sexual nature (use of profanity, name calling, sexual insinuations). *Id.* at 42–43, 46–52. Despite having read and signed USAP's Sexual Harassment Policy directing her to contact USAP's personnel manager at a given telephone number, Wilson never reported any of Brown's conduct to USAP during the term of her employment. *Id.* at 89–90.

Plaintiff Jones worked as a cashier at the Station from 7/13/96 until she resigned on 9/3/96. Jones dep. at 73, 139. She also alleges that Brown verbally and physically harassed her during this time period. *Id.* She claims that on one occasion, while she was in the station's bathroom, Brown forcibly kissed her. This caused her to faint and become ill later that day. *Id.* at 100–108.

Jones voluntarily resigned from her job on 9/3/96, purportedly out of fear for her safety while having to work the night shift.[3] *Id.* at 139–140. She now claims that this reason was pretextual, and that she was actually unable to work in Brown's presence due to his behavior. *Id.* at 140. Despite this, Jones and her husband went to Brown's home shortly after her resignation, where Brown attempted to address her safety concerns and convince her to come back to work. *Id.* at 141. Like Wilson, Jones never reported Brown's behavior to USAP as directed by the sexual harassment policy. Tate Aff. ¶ 9.

**B. Procedure**

After receiving right to sue letters from the Equal Employment Opportunity Commission (EEOC), Jones and Wilson filed their cases on 6/2/97 and 7/31/97, respectively, raising Title VII claims (Hostile Working Environment, Constructive Discharge) against USAP, and State-law claims (Assault and Battery, Intentional Infliction of Emotional Distress) against both defendants. Jones doc. # 1; Wilson doc. # 1.

Both defendants denied all charges and, following discovery, moved for summary judgment. Wilson doc.è20, 24; Jones doc.è33, 36. The Court then stayed this case pending resolution of *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (*Ellerth*) and *Faragher v. City of Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (*Faragher*). Wilson doc. # 46; Jones doc. # 68. Upon resolution of those cases, the Court lifted the stay and the parties have since filed supplemental briefs. Wilson doc. # 53; Jones doc. # 76.

## II. *ANALYSIS*

### A. Title VII Claims—General Standards

Among other things, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq,* prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). This includes both unwelcome, sex-based conduct that alters a term or condition of employment (i.e., hostile work environment) and coercing an employee's "resignation" based on sex (constructive discharge). *See generally* Lindeman & Grossman, *Employment Discrimination Law* at 780–783, 837–846 (3d ed.1996).

■■ *Ellerth* announced the availability of an affirmative defense for employers facing

---

**2.** "Unwelcome Physical Conduct; Sexually Explicit language or gestures; Uninvited or unwanted sexual advances; or An offensive overall environment, created for example by, the use of vulgar language, the presence of sexually explicit photographs or other materials, or the telling of offensive stories." Brown dep., exh. 2.

**3.** This fear was prompted by the late night attack on a woman by a hatchet-wielding man at a nearby Wal–Mart. Jones dep. at 138–140.

Title VII claims from employees who allege supervisor sexual harassment. *Id.* —— U.S. at ——, 118 S.Ct. at 2270. When such harassment results in *no* tangible employment action (discharge, demotion, or undesirable reassignment), an employer will not be liable if:

(a) [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and

(b) [the] plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.*

In contrast, this defense is not available "when the supervisor's harassment culminates in tangible employment action." *Id.* Under *Ellerth* and *Faragher*, then, each plaintiff's Title VII case against USAP turns initially on whether they suffered a tangible, adverse employment action (e.g., constructive discharge). If either plaintiff did, then USAP can be found vicariously liable for Brown's actions under hostile working environment and/or constructive discharge theories. If they did not, then USAP can invoke the *Ellerth/Faragher* affirmative defense. —— U.S. at ——, 118 S.Ct. at 2270.

### B. Constructive Discharge

■ Both plaintiffs resigned from USAP before complaining about Brown's behavior. Wilson dep. at 63; Jones dep. at 139–140. A normal voluntary resignation is not a "tangible employment action" within the meaning of *Ellerth/Faragher. Hyman v. Atlantic Medical Center,* 1998 WL 135249 at *10 (D.N.J.1998) (unpublished). However, if the employer made working conditions so intolerable that the employee was "forced" to resign, courts can recognize that a constructive discharge occurred, and that is a tangible employment action. *See McCoy v. Macon Water Authority,* 966 F.Supp. 1209, 1221 (M.D.Ga.1997).

■ To prove constructive discharge, a plaintiff must show that her "working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign." *Kilgore v. Thompson & Brock Management, Inc.,* 93 F.3d 752, 754 (11th Cir.1996); *Hill v. Winn–Dixie,* 934 F.2d 1518, 1527 (11th Cir.1991). There must be "a high degree of deterioration in working conditions, approaching the level of intolerable." *Hill,* 934 F.2d at 1527 (internal citation and quotes omitted).

■ Constructive discharge is difficult to show if the supposedly "intolerable" conditions lasted only for a short time. *Id.* Moreover, "constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation." *Kilgore,* 93 F.3d at 754; *accord Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987) ("Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast"). Obviously an employer cannot be given sufficient time to remedy, for example, a hostile environment, if it is not provided notice of it.

■ Wilson relies largely on generalized claims that Brown used profanity in her presence; berated her for failure to complete her nightly duties around the station; and occasionally rubbed against her while the two were in the cashier's booth each morning. Wilson dep. at 49–56, 65–70. As for specific incidents, she alleges that Brown once tried to open the restroom door while she was using the facilities, coyly asking "Do you need any help in there?" Wilson dep. at 46–47. Additionally, she maintains that Brown once asked her to drop her pants so he could feel her undergarments. *Id.* at 53.

Jones likewise relies upon generalized claims that Brown used profanity, though she also testified that he made sexually suggestive comments (i.e., he asked her the color of her pubic hair, jokingly propositioned her, etc.) and sometimes rubbed up against her while they were together in the cashier's booth. Jones dep. at 85–88, 97–100. Jones also alleges that Brown forcibly kissed her in the bathroom of the station, causing her to become ill and faint later that day. *Id.* at 100–108.[4]

As alleged, Brown's conduct towards both Wilson and Jones is boorish and offensive.

---

4. Jones further claims that past sexual abuse made her particularly sensitive to offensive con-

The Court recognizes that a factual issue *may* exist as to whether plaintiffs' working conditions were intolerable. Perhaps such is. for a jury to decide. *Compare Hill,* 934 F.2d at 1527 (affirming j.n.o.v. for harassing behavior occurring over a few weeks) with *Morgan v. Ford,* 6 F.3d 750, 756 (11th Cir. 1993) (reversing summary judgment on a constructive discharge claim because whether working conditions are intolerable is a question of material fact).

Nevertheless, neither plaintiff was constructively discharged because they failed to give USAP notice of Brown's behavior by utilizing USAP's internal grievance procedure, or otherwise notify USAP. They thus deprived USAP of a chance to remedy the situation. Tate Aff. ¶ 9. It is undisputed that USAP's established grievance procedure directed victims of supervisor harassment to call USAP's personnel manager, yet Wilson and Jones chose to disregard it. The prohibition against Brown's alleged behavior is spelled out on USAP's anti-harassment form. Both plaintiffs read and signed the form just prior to encountering Brown. Still, they failed to complain about it until several months after their resignation. Tate Aff. ¶ 7. By depriving USAP of a reasonable opportunity to remedy the situation, plaintiffs neutralized their constructive discharge claim.

Both Jones and Wilson claim that, while they read and signed the sexual harassment form, they did not truly have notice of it because the policy was not given to them or posted in the station. Wilson doc. # 51; Jones doc. # 74. However, neither plaintiff claims to have ever asked for a copy of the form. Additionally, several documents bearing both USAP's phone number and address and the regional manager's phone number were posted in the station. Jones dep. at 247, 249–254. Rather than using this infor-

mation to contact someone at USAP, plaintiffs chose to ignore it and instead quit and sue.

Given the pivotal importance notice plays in supervisor sexual harassment cases, *see Ellerth,* —— U.S. at ——, 118 S.Ct. at 2270, this Court concludes that the instant plaintiffs neutralized their constructive discharge claims by not notifying their employer of their problems with Brown. To hold otherwise would allow a constructive-discharge claiming employee to procedurally bypass her employer's grievance procedure and deprive it of the *Ellerth/Faragher* affirmative defense. That would simply moot the employer's preventive and corrective efforts, and gut *Ellerth/Faragher*'s goal of encouraging sensible grievance procedures.

This conclusion is reinforced by pre-*Ellerth/Faragher* constructive discharge precedent. The employees in *Kilgore* neutralized their constructive discharge claims by complaining to management but then failing to give it a reasonable chance to remedy the situation (they failed to return to work following their complaints). 93 F.3d at 754; *accord Garner,* 807 F.2d at 1539 (denying constructive discharge claim where employee, who quit just one day after complaining of an adverse reassignment which she felt was in retaliation for an EEOC claim, failed to give the employer sufficient time to address the matter).

Under both *Kilgore* and *Garner,* an employee must act reasonably and give the employer an opportunity, after utilizing a grievance procedure, to correct the discriminatory situation. Here neither plaintiff even began the remedial process since neither notified USAP's personnel manager in accordance with USAP's grievance procedure. Thus, USAP never had an opportunity to correct the situation.[5]

duct of a sexual nature. Jones doc. # 46 at 5. However, the standard to be used when determining whether a constructive discharge occurred is objective (i.e., whether the working conditions were so intolerable that they would cause a *reasonable* person to resign). *Kilgore,* 93 F.3d at 754. Thus, her subjective sensitivity to such conduct is not legally relevant.

5. Other courts also recognize the importance of notice in advancing a claim of constructive dis-

charge. *See Beran v. Pizza Hut of Titusville,* 1997 WL 842395 at *6 (S.D.Fla.1997) (summary judgment to employer because plaintiff never gave it an opportunity to correct the discriminatory situation) (unpublished); *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 841–42 (8th Cir.1998) (same); *cf. Boze v. Branstetter,* 912 F.2d 801, 805 (5th Cir.1990) (summary judgment for employer on constructive discharge claim where employee resigned rather than follow employer's internal grievance procedure).

Reading *Ellerth* and *Faragher* in concert with existing Eleventh Circuit caselaw, the new keystone to a sexual harassment claim is notice. The notice must be sufficient to afford an employer with a reasonable opportunity to remedy the problem. *See Faragher,* —— U.S. at ——, 118 S.Ct. at 2275 (Title VII's policy is best served by requiring employees to take reasonable steps to avoid or mitigate sexual harassment harm by utilizing employer's grievance procedure); *Bourque v. Powell Electrical Mfg. Co.,* 617 F.2d 61, 66 (5th Cir.1980) ("underlying Title VII policies are best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships").

### C. *Ellerth/Faragher* Affirmative Defense

Since USAP did not constructively discharge either plaintiff, no tangible employment action occurred. It therefore may invoke the *Ellerth/Faragher* affirmative defense. Again, USAP can escape liability on plaintiff's hostile work environment claim only if:

(a) [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and

(b) [the] plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Ellerth,* —— U.S. at ——, 118 S.Ct. at 2270.

■ On the first element, "proof that an employer had promulgated an anti-harassment policy is not necessary in every in-

stance as a matter of law...." *Id.* 118 S.Ct. at 2269. Even so, the effective promulgation of a workable anti-harassment policy satisfies the first element's reasonable care standard. *See Faragher* —— U.S. at ——, 118 S.Ct. at 2293 (1998) (formal sexual harassment policy with sensible complaint procedure satisfies employer's duty of care).

USAP's promulgated sexual harassment policy contained a grievance procedure and directed harassed employees to complain to their supervisor or (if the supervisor is the victimizer) USAP's personnel manager. The policy form both plaintiffs signed illuminated inappropriate behavior and stated: "Should the harassment originate from your supervisor, you should report the harassment to the personnel manager at [phone number]." Jones dep. exh. 2; Wilson dep. exh. 2.

■ Nevertheless, both plaintiffs contend that an issue of fact remains over whether USAP acted reasonably in protecting its employees from supervisor sexual harassment. Wilson doc. # 51; Jones doc. # 74. Specifically, they criticize USAP because it did not post its policy, nor provide them with a copy to keep. *Id.* Thus, they argue that such promulgation was legally deficient. Yet, both plaintiffs admitted that they read and signed the sexual harassment form mere days before Brown's offensive behavior commenced.[6] Wilson dep. at 38; Jones dep. at 74–75, 137. And neither claims that they were prevented from reading and understanding what they signed.[7]

In *Faragher,* the defendant city's sexual harassment policy was found ineffective because the city failed to communicate it to the

*Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993), suggests that summary judgment on a constructive discharge claim is inappropriate because whether an employee's working conditions are intolerable is a question of material fact. There the plaintiff complained about her supervisor's harassing behavior, but this failed to stop the offensive conduct. Id. at 756. While the plaintiff resigned, claiming constructive discharge, she first utilized her employer's internal grievance procedure. *Morgan* therefore is distinguishable.

**6.** *Cf. Watson v. Zurich–American Ins. Co.,* 221 Ga.App. 4, 6, 470 S.E.2d 684 (1996) ("where one who can read signs a contract without reading it, he is bound by the terms thereof, unless he can show that an emergency existed at the time of

signing that would excuse his failure to read it, or that the opposite party misled him by an artifice or device which prevented him from reading it, or that a fiduciary or confidential relationship existed between the parties upon which he relied in not reading the contract").

**7.** *Cf. Wagner v. Howell Enterprises, Inc.,* 184 Ga. App. 394, 361 S.E.2d 698 (1987) ("the only fraud which would relieve a party from an obligation which he has signed, where that party can read and write ..., is that fraud which prevents him from reading what he signed"); *accord, Douglas v. Standard,* 191 Ga.App. 640, 642, 382 S.E.2d 419 (1989); *Rivergate Corporation v. McIntosh,* 205 Ga.App. 189, 192, 421 S.E.2d 737 (1992) (no fraud where terms stated in document and plaintiff admitted he did not read them).

employees involved in that case. Also, it failed to keep track of harassment by supervisors, and it gave employees no alternative complaint channel if they found themselves harassed by a direct supervisor. *Id.* —— U.S. at ——, 118 S.Ct. at 2293. To be effective, the *Faragher* court held, an entity must communicate "some formal policy against harassment, with a sensible complaint procedure." *Id.* at 2293.

Here USAP required that all employees, including the plaintiffs, read and sign a copy of the sexual harassment form. Tate Aff. ¶ 2. In addition, USAP supplied an alternative channel for bypassing errant supervisors. *Id.* Finally, it in fact did keep track of any sexual harassment complaints against supervisors. *Id.* at ¶¶ 6, 10, 11. For that matter, neither plaintiff has claimed that they requested a copy of the form they each signed. Brown testified that they would have been given a copy had they asked.[8] Brown dep. at 36. The Court concludes as a matter of law that USAP's sexual harassment policy was effectively promulgated.

■ Plaintiffs argue that USAP's failure to affirmatively train its employees regarding sexual harassment violates its duty of care. Jones doc. # 46 at 12; Wilson doc. # 32 at 12. However, they point to no legal authority showing that this vitiates an *Ellerth/Faragher* affirmative defense.

Nor does the Court read such a requirement in *Ellerth/Faragher.* In fact, this Court holds that the promulgation of a grievance system as was done here is legally sufficient. Whether an employer wishes to go further by investing in preemptive "sensitivity training," or whatever may be politically fashionable at the time, is something for the employer—not a federal judge—to decide. *See Shealy v. City of Albany, Ga.,* 89 F.3d 804, 806 n. 6 (11th Cir.1996) (A "district judge does not sit as a sort of 'super personnel officer' . . . correcting what the judge perceives to be poor personnel decisions").

■ On the second *Ellerth/Faragher* element, an employee's failure to use the complaint procedure administered by an employer "will normally suffice to satisfy the employer's burden under the second element." *Ellerth,* —— U.S. at ——, 118 S.Ct. at 2269. Here both plaintiffs failed to report Brown's behavior to USAP, such as by calling the phone number listed in the policy, otherwise contacting USAP headquarters, or complaining to the regional manager. Tate Aff. ¶ 9; Wilson dep. at 86–87, 108; Jones dep. at 149–152.

■ Plaintiffs seek to justify this failure by claiming a fear of repercussion from Brown if they reported his behavior. Jones doc. # 74; Wilson doc. # 51. This allegation is based merely on conclusory assertions that Wilson and Jones felt they would get into trouble if they reported Brown's behavior. Jones dep. at 135; Wilson dep. at 89–90. As such, it is insufficient to withstand a motion for summary judgment. *See Fierro v. Saks Fifth Avenue,* 13 F.Supp.2d 481, 491 (S.D.N.Y.1998) ("generalized fear [of repercussions] can never constitute reasonable grounds for an employee's failure to complain to his or her employer"). USAP therefore has satisfied the second element.

Because neither plaintiff suffered an adverse employment action and USAP has satisfied the *Ellerth/Faragher* affirmative defense, summary judgment for USAP on all Title VII claims is appropriate.

### D. State Law Claims

On plaintiffs' Title VII claims this Court has federal question jurisdiction. 28 U.S.C. § 1331. Because USAP is entitled to summary judgment on all Title VII claims, however, plaintiffs' federal claims drop out of the case. "The decision whether to dismiss a complaint still containing state law issues after all federal causes evaporate is within the district court's sound discretion." *Flint Elec. Membership Corp. v. Whitworth,* 68 F.3d 1309, 1314 (11th Cir.1995), *modified on other grounds,* 77 F.3d 1321 (11th Cir.1996); *see also* 28 U.S.C. § 1367(c).

In Georgia, the statute of limitations for personal injury claims is two years.

---

8. Indeed, Jones has testified that she heard rumors of Brown's offensive conduct before being hired. Jones dep. at 88–90. If so, she should have been particularly sensitive to the possibility that sexual harassment by her supervisor might occur, causing her at least to note the grievance procedure when she signed the acknowledgment form. *Id.*

O.C.G.A. § 9–3–33. By filing the instant matters in 1997, each plaintiff beat the limitations clock by several months and tolled that period to boot. *See* 28 U.S.C. § 1367(d); *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 1005 (11th Cir.1993) (Under § 1367(d), the statute of limitations is tolled while claims are pending until 30 days after an order of dismissal, thus allowing the plaintiff time for filing a new action in State court without a lapse of its rights); *Linder v. Richmond County, Ga.*, 844 F.Supp. 764, 769 (S.D.Ga.), *aff'd*, 38 F.3d 574 (11th Cir.1994). Because neither plaintiff will suffer prejudice, the Court will dismiss their remaining State law claims.

### III. CONCLUSION

Accordingly, Defendant USA Petroleum's Motion for Summary Judgment in CV497–164 (doc. # 36) is ***GRANTED.*** Defendant USA Petroleum's Motion for Summary Judgment in CV497–219 (doc. # 24) is ***GRANTED.*** All of plaintiffs' federal claims in both cases are ***DISMISSED WITH PREJUDICE,*** while their State law claims in both cases are ***DISMISSED WITHOUT PREJUDICE.***

Defendant David Brown's Motions for Summary Judgment in CV497–164 (doc. # 20) and CV497–219 (doc. # 33) are ***DENIED AS MOOT.*** All claims against David Brown in CV497–164 and CV497–219 are ***DISMISSED WITHOUT PREJUDICE.***