A91A0614. CASTELLANA v. CONYERS TOYOTA, INC.
(407 SE2d 64)

BEASLEY, Judge.

Rhonda Castellana bought an automobile from Conyers Toyota, Inc. (CTI). The car was repossessed by CTI and she sued for conversion in October 1988. At all times pertinent to this action CTI was open and doing business at 945 Iris Drive in Conyers, Georgia. The sale was negotiated at the Iris Drive location, and all the contract

documents Castellana signed in connection with the transaction showed that address. However, in arranging service of the summons and complaint, her attorney contacted the Secretary of State's office and was erroneously told that CTI's registered agent could be found at a Klondike Road address in Conyers. This address was a former business location, and CTI had notified the Secretary of State's office of the change of address in April 1988, when it filed its 1988 annual registration. The Secretary of State's office reported the name of CTI's registered agent as William T. Paul, but Castellana's attorney wrote down the name incorrectly as William P. Hall.

Service was unsuccessfully attempted at the wrong address on Klondike Road on William P. Hall, but the deputy, who personally knew Paul, noted on the entry of service that Paul "can be served at Carey Paul Ford at Snapfinger Road." Nevertheless, Castellana's attorney requested the Secretary of State to acknowledge service pursuant to former OCGA § 14-2-62 (replaced by OCGA § 14-2-504, Ga. L. 1988, pp. 1070, 1072, effective July 1, 1989), and sent two copies of the complaint and the fee. The Secretary of State acknowledged service on November 2, 1988, and mailed a copy of the documents to the Klondike Road address. These documents were subsequently returned marked as undeliverable and Castellana was so advised by the Secretary of State.

A bench trial was held without notice to CTI and Castellana was awarded a default judgment. CTI was first notified of the litigation when a copy of the order was mailed to Iris Drive, the Secretary of State having corrected the record when it received the 1989 annual registration. Upon receipt CTI moved to set aside the default judgment under OCGA § 9-11-60 (d) (1). It was granted.

CTI moved for summary judgment on the ground that repossession of the car was legal under the contract documents signed by Castellana. It, too, was granted.

1. Plaintiff Castellana contends first that the trial court erred in setting aside the default judgment. She argues that lack of jurisdiction over the person of CTI because of ineffective service is the only possible ground that would authorize relief under OCGA § 9-11-60 (d), but that service was proper under former OCGA § 14-2-62 (b) (replaced by OCGA § 14-2-504, effective July 1, 1989). That section provides in pertinent part: "Whenever a corporation shall fail to appoint or maintain a registered agent in this state, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the Secretary of State shall be an agent of such corporation upon whom any process, notice, or demand may be served."

Appellant insists that due diligence was exercised by her attorney who, being unfamiliar with the corporate defendant, called the office

of the Secretary of State to learn the identity of its registered agent and office, had the sheriff attempt service on the named person at the given address, and served the Secretary of State when no agent could be located at the registered office; and that all the requirements of *Lovett Sports v. Atlantic Exhibit Svcs.*, 178 Ga. App. 278 (342 SE2d 726) (1986) for proper service were met by the mailing of the summons and complaint to the Secretary and obtaining his acknowledgment. She further asserts that CTI failed to comply with former OCGA § 14-2-61 (replaced by OCGA § 14-2-502, effective July 1, 1989) to change the address of its registered office, as the filing of the annual report form alone was not enough. See *Grimaud v. Knox-Georgia Homes*, 210 Ga. 514 (1 (b)) (81 SE2d 476) (1954).

The 1988 annual registration form filed by CTI with the Secretary of State's office fully complies with all the germane requirements of former OCGA § 14-2-61 (a) and (d), setting forth the procedures to be followed to change the address of a registered agent. Indeed, the Secretary of State officially certified that the 1988 annual registration filed by CTI was "in the form commonly accepted" by his office for change of address; and that "the standard practice is to update into the Secretary of State Computer Information System any changes made on the Annual Registration," but that in this case, through no fault of CTI, the changes were not updated into the computer system.

If the change of address had been properly entered into the computer information system and appellant's summons and complaint had therefore reflected the correct address, CTI's registered agent likely would have been properly served at the Iris Drive address and no default would have occurred. It is a fundamental tenet of due process that a defendant have notice of suit in accordance with law. The mistakes made by plaintiff's attorney and the Secretary of State's personnel which frustrated the operation of the law cannot deprive the defendant of that due process.

The court has discretion to set aside the judgment when the motion to set aside is made within the same term of court, as it was here. *Bricks v. Walker Showcase*, 255 Ga. 122, 124 (2) (336 SE2d 37) (1985). We make the same holding here as was made in that case: "Finding no abuse of discretion, we hold that the exercise of discretion by the court in setting aside the judgment will not be disturbed on appeal."

2. As previously stated, appellant claimed conversion. Although CTI established that the repossession was authorized by the contract documents signed by appellant, specifically the "spot delivery" form, she denied signing it and insisted that the signature on the form was a forgery. CTI moved for summary judgment based in large part upon the deposition testimony and affidavit of a GBI forensics and handwriting expert stating that the signature on the form was genuine.

Two months later appellant amended her complaint to add a claim for relief under the Georgia Fair Business Practices Act (OCGA § 10-1-390 et seq.), admitting that she signed the form but alleging that CTI deceived her into doing so. She also alleged that CTI's salesman orally misrepresented to her that her credit application had been approved by CTI the day before she executed the documents; and that she was unaware the sale was contingent upon approval of her credit application or that a third party was involved in the credit transaction.

Summary judgment was authorized. Five documents are instrumental:

(1) The "spot delivery" form clearly states that the credit application had not been approved or rejected by Toyota Motor Credit Corporation and that the buyer could take possession and use the vehicle pending approval of the application for credit. This form stipulated that in the event appellant's credit application was rejected or disapproved the vehicle must be returned straightaway to CTI; and that CTI retained a security interest empowering it to repossess the vehicle in the event of rejection or disapproval of Castellana's credit application.

(2) The Customer's Statement form, which bears the heading "Toyota Motor Credit Corporation administered by World Omni Financial Corp.," reflects that the buyer has applied for credit and provides that the application will be submitted to TMCC for purchase or consideration as to whether it meets purchase requirements.

(3) The Installment Sales Contract bears the same heading and on the reverse side contains a seller's assignment granting CTI the option to sell or assign "to Toyota Motor Credit Corporation (TMCC) all of its right, title or interest in this contract."

(4) The typewritten Purchase Contract refers to Toyota Motor Credit Corp. and authorizes CTI as dealer to "initiate and conduct a credit investigation based upon the information voluntarily provided by Purchaser. . . ."

(5) The MV-1 form lists Toyota Motor Credit Corp. as first lienholder on the vehicle, and in the agreement to provide accidental physical damage insurance there are five references to TMCC, one of them authorizing it to apply for insurance in its own name to protect its interest in the vehicle.

The only reasonable construction of these documents is that no approval of the purchaser's credit application had been made when she signed them, nor would this occur until TMCC processed and approved it, and that CTI was authorized to repossess the vehicle if her credit application was rejected or disapproved. " '[I]t is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy,

and injury to the public interest clearly appears. (Cit.)' [Cit.]" *Kurc v. Herren*, 196 Ga. App. 331, 332 (1) (396 SE2d 62) (1990). There being no such prohibition, these contracts are enforceable.

" 'Fraud which constitutes a ground for voiding the contract under (OCGA § 13-5-5) must be fraud which induced the parties to enter the contract. (Cit.)' [Cit.]" *Hudson v. Montcalm Pub. Corp.*, 190 Ga. App. 629, 631 (379 SE2d 572) (1989). Appellant went to CTI of her own volition and chose the car she wished to buy. She contends that she would not have signed the documents had she not been told by CTI's salesman that her credit had already been approved. The salesman denies having made any such statement. Even assuming that such a misrepresentation was made, it is a matter of substantive law that, absent fraud, parol evidence is without probative value to vary the terms of a written contract. *Lyon v. Patterson*, 138 Ga. App. 816, 820 (227 SE2d 423) (1976).

" 'Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations. . . . (Cits.)' [Cit.]" *Carpenter v. Parsons*, 186 Ga. App. 3, 5 (2c) (366 SE2d 367) (1988). In her deposition appellant testified that she read every document she signed, and that she understood or believed she understood what they said prior to signing them. She estimated that reading and signing these documents took about 2 hours and 45 minutes. She agreed when questioned that in the documents she signed there were no statements that her credit application had been approved, and that she knew when she signed them that Toyota Motor Credit Corporation, not CTI, would be financing the loan.

A prerequisite to stating a claim for relief under the Fair Business Practices Act is the commission of some unfair act or deceptive practice, from which the Act is designed to protect the public. OCGA § 10-1-391 (a). " 'In the absence of a confidential relationship a party may not rely and act on the misrepresentations of an opposite party as to the contents of a written instrument where the party signing can read and where no artifice or fraud is practiced which prevents the party signing from reading the instrument.' [Cits.]" *Heidt v. Potamkin Chrysler-Plymouth*, 181 Ga. App. 903, 904-905 (354 SE2d 440) (1987). See also *Credithrift of America v. Whitley*, 190 Ga. App. 833 (380 SE2d 489) (1989). Having failed to establish any unfair or deceptive practice by CTI, the purchaser's claim under the FBPA is likewise foreclosed.

The construction of a contract is a matter of law for the court under OCGA § 13-2-1, particularly where, as here, the terms are unambiguous. It is thus a matter peculiarly well suited for adjudication by summary judgment, *Foshee v. Harris*, 170 Ga. App. 394, 395 (317 SE2d 548) (1984), which in this case was proper.

3. CTI's motion for contempt is denied.
*Judgment affirmed. Banke, P. J., and Carley, J., concur.*

DECIDED MAY 28, 1991 —
REHEARING DENIED JUNE 25, 1991.

*King, Morriss, Talansky & Witcher, Joseph H. King, Jr.*, for appellant.
*Swift, Currie, McGhee & Hiers, Jeffrey Y. Lewis, Cashin, Morton & Mullins, A. L. Mullins, Jr.*, for appellee.