A91A0996. BENNETT v. D. L. CLABORN BUICK, INC. et al.
(414 SE2d 12)

COOPER, Judge.

Appellant appeals from the trial court's grant of summary judgment to one of the appellees, General Motors Acceptance Corporation ("GMAC").

In 1987, appellant bought a 1987 Buick from D. L. Claborn Buick, Inc. ("Claborn") which was financed by GMAC pursuant to a Retail Installment Sale Contract (the "Contract"). Appellant testified that he originally went to Claborn for repair work on his 1983 Buick. While there, a salesman asked appellant if he would like a new car, since he was having trouble with his car. Appellant replied that "everybody would like a new car." The salesman then pointed to the 1987 Buick, and after appellant drove the car, he expressed an interest in purchasing it. The salesman called appellant the next day and told him that the sale of the car to appellant could be arranged. Appellant signed all the transfer and financing documents for the car, and although he was given an opportunity to review all the documents, he could not do so because he cannot read except in a very limited capacity. Upon execution, the contract was assigned for value to GMAC. The documentation signed by appellant denominated the vehicle he was purchasing as a "new" car, yet the same documentation, including an Odometer Mileage Statement, also disclosed that the car had accumulated mileage of 5,268 miles. Appellant testified that he did not look at the odometer prior to the purchase. In accordance with the car's classification as "new" and the salesmen's representations to appellant that the car was new, appellant was given a new car warranty on the car. In fact, however, the car purchased by appellant had been used as a "demonstrator" by an employee of Claborn who had driven the car for personal reasons and to commute to work. The car had never been titled to another consumer nor had it been the subject of a retail sale to another consumer. Soon after the purchase, appellant had problems with the car which were repaired by Claborn; however appellant contended that even after the repairs, the car did not run as it should. Appellant contacted Claborn about the car on one other instance, but since appellant was not satisfied with the service or the treatment he received at Claborn, he consulted his attorney and revoked acceptance of the car by letter to Claborn. Appellant

sued Claborn and GMAC for fraud and for engaging in deceptive and unfair trade practices. Specifically, appellant contended that appellees misrepresented the condition of the car as new with the intention of deceiving appellant who relied on those misrepresentations. GMAC moved for summary judgment, contending that no misrepresentations were made to appellant, and even if they were made by Claborn, GMAC would have no liability thereon because GMAC did not participate in the sales negotiations for the car. The trial court granted summary judgment to GMAC.

1. In his first enumeration of error, appellant contends that GMAC is subject to all of appellant's claims against Claborn even though appellant had no direct contact with GMAC or any representative thereof. We agree with appellant because the Contract contains the following prominent and unambiguous language: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." This language follows the mandates of state and federal law. See OCGA § 10-1-394; Rules & Regulations of the State of Georgia § 122-5-.01; 16 CFR § 433.2 (1991). Therefore, we conclude that any claim appellant may have against Claborn can properly be asserted against GMAC.

2. The gravamen of appellant's complaint and the basis for his appeal is that Claborn and GMAC fraudulently and deceptively misrepresented the condition of the car to him as new when in fact it was not new but had been driven for 5,268 miles. Appellant contends that this misrepresentation of a material fact caused damage to appellant in that he intended to buy, and thought he was buying, a new car based on the verbal representations made to him, yet in fact he received a used car. This court has held that "[i]t may be considered an intrinsic quality of a car sold as new that it has been neither damaged *nor used to any significant extent.* [Cits.]" (Emphasis supplied.) *Horne v. Claude Ray Ford Sales,* 162 Ga. App. 329 (1) (290 SE2d 497) (1982). See also *Macon Chrysler-Plymouth v. Sentell,* 179 Ga. App. 754 (1) (347 SE2d 639) (1986). Although Claborn and its agents knew that the car had been used as a demonstrator and had significant mileage on it, they represented the car to appellant as "new." "The question of whether the car delivered was new is generally one of fact for the jury. [Cits.]" *Thompson v. Huckabee Auto Co.,* 190 Ga. App. 540, 542 (1) (379 SE2d 411) (1989). Appellee has urged that appellant failed to exercise diligence to observe the odometer reading in the car. " ' "While a party must exercise reasonable diligence to pro-

tect himself against the fraud of another, he is not bound to exhaust all means at his command to ascertain the truth before relying upon the representations. Ordinarily the question whether the complaining party could ascertain the falsity of the representations by proper diligence is for determination by the jury. (Cits.)" [Cits.]' " *Horne*, supra at 330. See *Paces Ferry Dodge v. Thomas*, 174 Ga. App. 642 (2) (331 SE2d 4) (1985). We cannot conclude as a matter of law that, in the circumstances presented by this case, appellant's failure to observe the odometer reading amounted to a failure of due diligence. See *Horne*, supra at 330. This is a question for the jury. Further, appellee's argument that appellant has suffered no damages is without merit because, in a case of fraud, "the measure of damages . . . is the difference between the actual value of the property at the time of purchase and what the value would have been if the property had been as represented. [Cits.]" *Horne*, supra at 330. We therefore conclude that the trial court erred in granting summary judgment to appellee.

Appellant argues in two enumerations that Georgia is bound by the federal definition of a "used" car contained in the federal regulations passed pursuant to 15 USCA § 2309, found at 16 CFR § 455.1 (1991). Appellant contends that since "used car" under this definition would include the demonstrator that appellant purchased, Claborn misrepresented a "used" car as a "new" car and appellees are liable to appellant for fraud, misrepresentation and deceptive trade practices under state and federal law. The analysis of the regulations states the following in a footnote: "Our decision to include demonstrators in the definition of 'used vehicle' does not in any way preempt state titling laws which identify demonstrator models as 'new' cars. The Rule adopted here does not interfere with the classification of demonstrators for purposes of title; the Rule only requires that, if driven more than the limited number of miles needed to move or road test a vehicle, a car, when offered for sale, must display the Buyers Guide so as to provide consumers with warranty disclosures. . . ." 49 Fed. Reg. 45707, n. 234 (1984). Georgia law has historically required a car to be titled as a used car only if it had previously been the subject of a retail sale to a consumer. *Toirkens v. Willett Toyota*, 192 Ga. App. 109 (1) (384 SE2d 218) (1989); *Henderson v. Martin Burks Chevrolet*, 183 Ga. App. 868 (1) (360 SE2d 430) (1987). Under state law, the car sold to appellant was allowed to be titled as a new car because it had never been previously sold to a consumer. See *Toirkens*, supra at 109-110; *Henderson*, supra at 869-870. The trial court relied on *Toirkens*, supra, in granting summary judgment to GMAC. However, the issue considered in *Toirkens* was whether the car was misrepresented as new when it had been previously titled to a relative of the owner of the car dealership for the convenience of the dealership but had never

been the subject of a retail sale. The court held that since the car had not been the subject of a retail sale, it fell within the definitions of a new car under the statutes regulating used car dealers and identification of motor vehicles and parts. The court considered the evidence that the titleholder never operated the car and determined that non-disclosure of the status of title did not create an issue of fraud. In the instant case, there is no contention that appellees misrepresented the status of title of appellant's car; however appellant contends that appellees misrepresented the actual condition of the car. Statutorily, the car was allowed to be titled as a "new" car. See *Henderson*, supra at 869-870. However, whether appellees misrepresented the "intrinsic quality" of the car to appellant is a question for the jury. See *Horne*, supra at 329.

*Judgment reversed. Birdsong, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 5, 1991 —
RECONSIDERATION DENIED DECEMBER 19, 1991.

*Phillip J. Walsh*, for appellant.

*Levine & D'Alessio, Morton P. Levine, McCullough & Payne, John G. McCullough, Gregson T. Haan*, for appellees.