A96A1886. KONDO et al. v. MARIETTA TOYOTA, INC. et al.

(480 SE2d 851)

POPE, Presiding Judge.

On or about October 15, 1994, plaintiffs/appellants Masuo and Chiyo Kondo, husband and wife, went to defendant Marietta Toyota Inc.'s dealership ("Marietta Toyota") to look at cars. Because plaintiffs were Japanese and limited in their ability to read and understand written English, they brought a friend with them to act as interpreter. After plaintiffs selected a 1994 Toyota Previa van, they were taken to the manager's office to sign paperwork. During that time, they became separated from their interpreter who had gone to another office to help obtain verification of plaintiffs' automobile insurance.

Although plaintiffs contend it was their belief they were purchasing rather than leasing the vehicle, the document they signed was clearly labeled "Closed End Motor Vehicle Lease Agreement." The lease agreement required plaintiffs to pay Marietta Toyota, as lessor, a non-refundable cash payment of $4,000 and thereafter 60 monthly payments of $387.44 each, equaling $23,246.40. Thus, the total of plaintiffs' payments under the lease was $27,246.40. The lease document also specifically provided that Marietta Toyota would be assigning the lease and vehicle to defendant VT Inc., as Trustee for defendant World Omni Financial Corporation (collectively "WOFC"), and plaintiffs acknowledged and agreed to that assignment.

The lease agreement listed the vehicle as "new" but also disclosed that the mileage on the odometer at the time of the transfer was 6,650 miles. This same mileage was listed on the Odometer Disclosure Statement also signed by plaintiffs. Additionally, plaintiffs signed an "Acknowledgment of Disclosure by Dealer of Damage to Motor Vehicle" which stated that the vehicle had been previously damaged and received repairs totaling $1,912.35. The record reveals that although the van had never been titled to any person other than Marietta Toyota, it had been used as a demonstrator by the dealership. The vehicle was being driven by the wife of one of Marietta Toyota's sales managers at the time it sustained damage.

In May 1995, plaintiffs filed this lawsuit in the State Court of Fulton County, alleging violations of the federal Consumer Leasing Act (Count 1) and the Georgia Fair Business Practices Act (Count 2). After defendants filed their motion for summary judgment, plaintiffs

amended their complaint, adding a count seeking rescission of the lease on the grounds of unconscionability (Count 3) as well as a claim for attorney fees and expenses (Count 4). They also filed a motion to strike the only affidavit filed by defendants in support of their motion for summary judgment. The trial court denied plaintiffs' motion to strike and granted defendants' motion for summary judgment. Plaintiffs now bring this appeal alleging four enumerations of error.

1. Plaintiffs first allege the trial court erred in ruling that the federal Consumer Leasing Act ("CLA") did not apply in this case because the total amount of plaintiffs' payments under the lease was $27,246.40, exceeding the $25,000 jurisdictional ceiling imposed by the Act.

The CLA applies to leases of personal property "for a total contractual obligation not exceeding $25,000. . . ." 15 USCA § 1667 (1). Although the term "total contractual obligation" is not defined in the CLA or in any of its regulations, federal courts have held that with respect to closed-end leases, the term "total contractual obligation" includes the total of all monthly payments due under a vehicle lease as well as any non-refundable cash payments made at the inception of the lease. *Easterwood v. General Elec. Capital Auto Lease*, 825 FSupp. 306, 310 (N.D. Ga. 1993). See also *Sanders v. Gold Key Lease*, 906 FSupp. 197 (SDNY 1995).

In this case, plaintiffs' total contractual obligation consisted of the $4,000 non-refundable cash payment paid at the time they entered into the lease plus $23,246.40 in monthly installments, totaling $27,246.40. "As such, the lease in issue does not come within the reach of the Consumer Leasing Act and, therefore, is not unlawful and void under federal law." *Easterwood v. General Elec. Capital Auto Lease*, 825 FSupp. at 310.

We reject plaintiffs' argument that because Marietta Toyota received the $4,000 cash payment before the assignment of the lease and WOFC will receive the balance of the lease payments totaling $23,246.40 after assignment, two separate contractual obligations were created by the lease document, each coming under the $25,000 ceiling imposed by the CLA. Plaintiffs signed just one document obligating them to pay a total of $27,246.40 for the lease of their van. Marietta Toyota was the original lessor named in the lease and initially entitled to receive plaintiffs' lease payments but, upon assignment, the right to receive future lease payments vested in WOFC. The assignment from Marietta Toyota transferred title in the lease and vehicle to WOFC (see generally OCGA § 44-12-22; *Chattahoochee Holdings v. Marshall*, 146 Ga. App. 658 (1) (247 SE2d 167) (1978)) and did not create two separate contractual obligations as alleged by plaintiffs. Accordingly, the trial court did not err in granting summary judgment on Count 1 of plaintiffs' amended complaint.

2. Plaintiffs next allege the trial court erred in ruling that their van, which was leased to them as "new" but had been driven 6,650 miles and had been involved in a collision, was a "new" car.

Georgia's Used Motor Vehicle Dealers' and Used Motor Vehicle Parts Dealers' Registration Act (OCGA § 43-47-1 et seq.) defines a "used motor vehicle" or "used car" as "any motor vehicle or car other than a motor vehicle which has never been the subject of a retail sale by a new motor vehicle dealer or a used motor vehicle dealer and which is the subject of a retail sale to a consumer for his or her own use or of a resale to another licensed dealer." OCGA § 43-47-2 (16). The Georgia statute that governs the identification of and purchase and resale of motor vehicles and parts (OCGA § 40-4-1 et seq.) defines a "new passenger car" as "any passenger car which has never been the subject of a sale at retail to the general public." OCGA § 40-4-1 (2). And the Georgia Motor Vehicle Warranty Rights Act (OCGA § 10-1-780 et seq.) considers a "new motor vehicle" as one "that was leased or purchased in this state or registered by the original consumer in this state and on which the original motor vehicle title was issued to the lessor or purchaser without having been previously issued to any person other than the selling dealer. . . . The term 'new motor vehicle' includes a demonstrator or lease-purchase, as long as a manufacturer's warranty was issued as a condition of sale, unless specifically excluded under this definition." OCGA § 10-1-782 (11).

Because plaintiffs' van was always titled in Marietta Toyota and was never before the subject of a retail sale or lease to a consumer, it clearly fit the statutory definition of a "new car" under Georgia law. Therefore, Marietta Toyota did not engage in a fraudulent or unfair business practice by listing the vehicle as "new" on the lease agreement. See *Toirkens v. Willett Toyota*, 192 Ga. App. 109, 110 (1) (384 SE2d 218) (1989).

Relying on *Bennett v. D. L. Claborn Buick*, 202 Ga. App. 308 (2) (414 SE2d 12) (1991), plaintiffs argue that notwithstanding the foregoing statutory provisions, the question of whether the vehicle delivered to plaintiffs was "new" was one of fact for the jury because "it may be considered an intrinsic quality of a car sold as new that it has been neither damaged nor used to any significant extent." (Citations, punctuation and emphasis omitted.) *Bennett* at 309. However, in *Bennett*, the vehicle at issue was represented by the sales person to be "new" in the sense of it never having been significantly driven, and the plaintiffs in that instance had no actual knowledge that the vehicle had been used as a demonstrator. In this case, the vehicle leased by plaintiffs was not represented to be "new" in the sense of it not having been damaged nor used to any significant extent. Rather it was listed as "new" in compliance with Georgia law because the vehicle had not been the subject of a previous sale or lease. Addition-

ally, in this case, plaintiffs signed three separate documents stating the exact extent of the vehicle's previous use and the extent of the collision damage that resulted from that use. Under these circumstances, we find that the trial court did not err in dismissing plaintiffs' claims under the Georgia Fair Business Practices Act. See *Henderson v. Martin Burks Chevrolet*, 183 Ga. App. 868 (1) (360 SE2d 430) (1987).

3. Plaintiffs next allege the trial court erred when it denied their motion to strike the only affidavit submitted by defendants in support of their motion for summary judgment. However, plaintiffs' argument that the affidavit was defective because it did not specifically recite that it was made from the affiant's personal knowledge is without merit.

Defendants presented the sworn statement of Marietta Toyota's general manager setting forth his title and responsibilities and attaching those documents relevant to plaintiffs' leasing of the vehicle. The affidavit specifically recited that each of the documents in question was made and kept in the ordinary course of business of Marietta Toyota. "Since OCGA § 24-3-14 (b) specifically provides that a proper business record is 'admissible in evidence *in proof of* the act, transaction, occurrence, or event'. . ., we find no merit in [plaintiffs'] argument that [defendants'] affidavit was insufficient because it failed to reflect the affiant's personal knowledge [of this lease transaction]." *Intl. Business Consulting v. First Union Nat. Bank of Ga.*, 192 Ga. App. 742, 743 (386 SE2d 400) (1989). Additionally, the information contained in the affidavit is consistent with and cumulative of deposition testimony and other evidence contained in the record and was uncontroverted by plaintiffs. Therefore, it was not error for the trial court to deny plaintiffs' motion to strike the affidavit. *Lott v. Liberty Mut. Ins. Co.*, 154 Ga. App. 474 (2) (268 SE2d 686) (1980).

4. Plaintiffs lastly argue the trial court's grant of summary judgment on Count 3 of plaintiffs' amended complaint alleging unconscionable conduct under OCGA § 11-2A-108 was premature because the amended complaint was filed just two days before the hearing on defendants' original motion for summary judgment, and the issue of unconscionability had not been briefed by the parties.

"[U]nless the record unequivocally demonstrates that the non-movant's defenses to the motion are wholly meritless and frivolous or *the non-movant fails to raise the procedural defect at the hearing* . . . the trial court's entry of an order on the motion [for summary judgment] prior to the expiration of thirty days from its service is reversible error, even though the trial court may ultimately determine on renewed motion that the movant is entitled to summary judgment." (Emphasis supplied.) *Dixon v. Midland Ins. Co.*, 168 Ga. App. 319, 320 (2) (309 SE2d 147) (1983).

Our review of the transcript of the hearing reveals that when defendants' counsel asked the court to grant summary judgment on all counts contained in plaintiffs' amended complaint, plaintiffs' attorney failed to raise any objections and instead chose to argue the merits of the unconscionability claim. We find, therefore, that plaintiffs have waived any defect as to the timeliness of the granting of summary judgment on their amended complaint. See *Mobley v. Coast House*, 182 Ga. App. 305, 309 (355 SE2d 686) (1987).

Accordingly, we need not address the merits of plaintiffs' unconscionability claim or the jurisdiction of the State Court to grant the relief sought by plaintiffs in Count 3 of the amended complaint.

*Judgment affirmed. Andrews, C. J., and Smith, J., concur.*

DECIDED JANUARY 13, 1997 —
RECONSIDERATION DENIED FEBRUARY 5, 1997 —

*Phillip J. Walsh*, for appellants.

*Awtrey & Parker, Toby B. Prodgers, Robert B. Silliman, Harvey D. Harkness, Levine & Block, Stephen H. Block*, for appellees.