A00A0462. NEAL POPE, INC. v. GARLINGTON.
(537 SE2d 179)

POPE, Presiding Judge.

Patrick Christopher Garlington filed suit against Neal Pope, Inc. after a car he bought from that company did not work properly. Following a hearing, the superior court granted partial summary judgment to Garlington based on Neal Pope's failure to comply with the Fair Business Practices Act ("FBPA"), OCGA § 10-1-390 et seq., and with OCGA § 40-1-5 (a). The court denied Neal Pope's motion for summary judgment and partially granted Garlington's motion to compel discovery. Neal Pope appeals, arguing in three enumerations that the court erred. For the following reasons, we affirm the superior court's decision.

The record establishes the following undisputed facts. On April

3, 1997, Garlington bought a 1997 Dodge Avenger from Neal Pope Dodge. The car was a demonstrator model which had been driven 3,000 miles before Garlington bought it. The manufacturer's suggested retail price ("MSRP") for the car was $21,753. Before buying it, Garlington was aware that the car was a demonstrator model and that the price had been reduced accordingly. Garlington signed a written contract confirming the terms and conditions of the purchase. He obtained financing on the car through Chrysler Financial.

Garlington had various problems with the car and, during his fourth service department visit, requested copies of the car's repair history. From the repair orders he learned that the car had undergone extensive repairs before he bought it, including having had the original engine replaced with a new one. When Garlington investigated more, he learned that the engine had been replaced after it had overheated and several of the car's components had melted down. Before Garlington bought the car, Neal Pope had tried three times to repair the car; the repairs had been extensive, totaling $5,469.64. Because the car was under warranty, the repairs were billed to Chrysler Corporation.

Garlington was not aware of the car's various problems and repairs when he bought the car. Although Garlington had asked the Neal Pope salesman whether the car had any problems other than the high mileage, the salesman told him "no." Garlington would not have bought the car if he had known about the damage and repairs. The Neal Pope service manager testified that Neal Pope did not have a policy requiring disclosure of repairs to prospective buyers.

Garlington continued having numerous problems with the car, and in February 1998, he wrote Chrysler regarding these problems. In this letter, Garlington demanded that Chrysler buy back the car and pay him $285 for his lost work time. Chrysler refused to do this unless Garlington provided a release of all liability to it and Neal Pope. On February 27, 1998, Garlington wrote Neal Pope about the problems he had experienced with the car. In the letter, he itemized the damages he claimed, including $23,567.76 for the "Buy back of Dodge Avenger at delivery price." Again on March 17, 1998, Garlington wrote Chrysler regarding the amount he wanted Chrysler to pay him for buying the car back. In this letter Garlington itemized his demand for reimbursement; his demand included sales tax and the interest he had paid. On March 18, 1998, Chrysler responded to this letter, refusing to pay Garlington unless he provided a release of all liability to both it and Neal Pope. Garlington refused this counteroffer, stating in his response that he would release Chrysler, but not Neal Pope. Garlington stopped making payments on the car, and Chrysler repossessed it in July 1998. At some later point, Garlington

and Chrysler went to arbitration about the matter.

Garlington sued Neal Pope on April 13, 1998. His complaint contained counts alleging breach of the FBPA and fraud; he also claimed punitive damages. With respect to the FBPA claim, Garlington alleged that Neal Pope had breached its statutory duty under OCGA § 40-1-5 to disclose before purchase that damage had occurred to the car that cost more than five percent of the MSRP to repair. Garlington further claimed that Neal Pope's breach of this statutory duty was a violation of the FBPA.

Neal Pope moved for summary judgment, essentially arguing that there was no liability because Garlington failed to rescind the contract and because there was no obligation for Neal Pope to disclose that the car had a *newer* engine than Garlington believed. Garlington then filed a cross-motion for partial summary judgment, arguing that summary judgment was appropriate on his FBPA claim. Garlington had also moved to compel various discovery responses. As stated above, the court granted Garlington summary judgment on the FBPA claim, partially granted Garlington's motion to compel and denied Neal Pope's motion for summary judgment.

1. Neal Pope argues that the court erred in denying its motion for summary judgment and in granting Garlington's partial motion. We disagree and conclude that the court properly granted the partial motion on Garlington's FBPA claim. OCGA § 40-1-5 (b) states in pertinent part: "[P]rior to the sale of a new motor vehicle,[1] a dealer must disclose to the buyer any damage which has occurred to the vehicle of which the dealer has actual knowledge and which costs more than 5 percent of the manufacturer's suggested retail price to repair." Subsection (g) of the same statute states: "[a] violation of this Code section shall be a per se violation of Code Section 10-1-393," which delineates unfair or deceptive practices in consumer transactions.

In this case, the undisputed facts showed that the original MSRP for the car was $21,753 and that the repairs to the car which were performed before the sale totaled $5,469.64, which was more than five percent of the MSRP. The undisputed evidence also showed that Neal Pope mechanics had repaired the car, but when Garlington asked the Neal Pope salesman whether there had been problems with the car, the salesman said that other than the mileage, there had been no problems with the car. Because Neal Pope did not dis-

---

[1] OCGA § 40-1-5 (a) specifies that " 'new motor vehicle' shall have the same meaning as set forth in Code Section 40-2-39." That section defines "new motor vehicle" as one "which has been sold to a dealer and on which the original motor vehicle title has not been issued." Thus a demonstrator such as Garlington bought qualifies as a "new motor vehicle" under OCGA § 40-1-5. See *Kondo v. Marietta Toyota*, 224 Ga. App. 490, 492 (2) (480 SE2d 851) (1997); see also *Bennett v. D. L. Claborn Buick*, 202 Ga. App. 308, 309 (2) (414 SE2d 12) (1991).

close the repairs as required by OCGA § 40-1-5 (b), we find that the superior court's grant of summary judgment on Garlington's FBPA claim was proper.

In so finding, we reject Neal Pope's argument that because the old engine was replaced, the repairs at issue were not encompassed by OCGA § 40-1-5 (b). Under a reasonable interpretation of OCGA § 40-1-5 (b), any repairs which are necessary to fix damage to a vehicle, regardless of whether those repairs involve replacing damaged car parts, are included in the definition of "repair." Neal Pope's argument would lead to a nonsensical result: if the old engine had been rebuilt for more than five percent of the MSRP, disclosure would be required, but if the old engine was *replaced* with a new engine, no disclosure would be necessary.

Similarly, Neal Pope's reliance on *Henderson v. Martin Burks Chevrolet*, 183 Ga. App. 868 (360 SE2d 430) (1987), which was decided before the enactment of OCGA § 40-1-5, is misplaced. In *Henderson*, the truck which the plaintiffs bought had been used as a demonstrator, and the plaintiffs were aware of this fact. After they bought the truck, the plaintiffs asked the salesman whether the truck had been involved in a wreck and were told that it had not been. Later the plaintiffs learned that, in fact, the truck *had* been involved in a wreck, and they sued the dealership for fraud. The trial court granted the car dealership's motion for a directed verdict, and this court affirmed.

In reaching its conclusion that there was no liability, the *Henderson* court reasoned that because the plaintiffs knew of the truck's prior use, they knew of "the potential for its having been damaged as the result of that use." *Henderson*, 183 Ga. App. at 870. The court stated that it was aware of no authority, "which would require the seller of a vehicle which has been used so extensively to gratuitously inform the purchaser of all repairs which may have been done on the vehicle as the result of such use." Id. at 870. Moreover, the *Henderson* court found the plaintiffs did not ask about the existence of any previous damage until *after* they had bought the truck for a discount based upon its prior use as a demonstrator.

Although the plaintiffs in *Henderson* did not ask the salesman about the repairs until after the sale, the enactment of OCGA § 40-1-5 (b) now requires the disclosure of repairs to a "new motor vehicle" which cost more than five percent of the MSRP. This statutorily imposed duty applies to all "new motor vehicles," regardless of whether they have been used as demonstrators. *Henderson* conflicts with OCGA § 40-1-5 (b), is no longer good law, and is hereby overruled.

Accordingly, the court properly granted Garlington's motion for partial summary judgment on the FBPA claim because the undis-

puted facts established a violation of OCGA § 40-1-5, and thus a per se violation of the FBPA. Compare *Nall v. Bill Heard Chevrolet*, 238 Ga. App. 365 (518 SE2d 164) (1999). Contrary to Neal Pope's arguments, given the facts of this case and the applicability of OCGA § 40-1-5, there is no factual issue on the FBPA claim regarding due diligence and reasonable reliance. Similarly, the court properly denied Neal Pope's motion for summary judgment on the fraud claim because factual issues remained.

2. Neal Pope argues that Garlington's action is barred because he failed to rescind the sales contract after learning of the purported misrepresentation. Neal Pope contends that this court has repeatedly held that a plaintiff who alleges fraudulent inducement into a contract with a merger provision,[2] who elects to affirm the contract after learning of the fraud, is barred from proceeding with a tort claim. See *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 379 (436 SE2d 94) (1993). In other words, to recover in fraud, the party must promptly rescind the contract upon learning of the fraud; otherwise, the party is estopped from establishing reliance upon the misrepresentation. See *Rampey v. Jay Pontiac GMC Truck*, 211 Ga. App. 632, 633 (440 SE2d 52) (1993). Neal Pope argues that because Garlington continued to drive the car, his suit was barred.

Based on the facts presented here, we disagree. In February 1998, Garlington first learned of the pre-purchase repairs. Later that month, he wrote Chrysler regarding these problems and demanded that Chrysler buy back the car. On February 27, 1998, Garlington wrote Neal Pope about the problems, itemizing the damages he claimed, including $23,567.76 for the "Buy back of Dodge Avenger at delivery price." Again on March 17, 1998, Garlington wrote Chrysler regarding the company buying the car back. In this letter, Garlington itemized his demand for reimbursement; his demand included sales tax and the interest he had paid. In April 1998 Garlington filed suit, and about that time he stopped making payments on the car. Chrysler repossessed the car in July 1998.

One who seeks rescission of a contract for fraud must restore or offer to restore the consideration received thereunder, as a condition precedent to bringing the action; however, restoration by the purchaser is not an absolute rule, and does not require that the defrauding party be placed in exact status quo, but only that he be placed substantially in his original position and that the party rescinding derives no unconscionable advantage from the rescission.

---

[2] For purposes of this opinion, we assume without deciding that Neal Pope's representations regarding the merger clause are correct.

(Citations omitted.) *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589 (1) (411 SE2d 518) (1991). See also OCGA § 13-4-60; *Bob Maddox Dodge v. McKie*, 155 Ga. App. 263, 264 (2) (270 SE2d 690) (1980).

After learning of the car's repair history, Garlington promptly offered to return the vehicle to Chrysler, and he also offered to return the car to Neal Pope. Then he stopped making payments on the car. It is unclear what further steps Garlington could have taken to try to rescind the contract. In contrast to the situation in *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, Garlington's actions did not affirm the contract. Accordingly, Neal Pope's arguments are misplaced.

3. Finally, Neal Pope argues that the court erred in partially granting Garlington's motion to compel. Specifically, Neal Pope complains that the court erred in directing it to disclose its federal and state tax returns from 1996 forward and to answer two interrogatories which requested a line-by-line itemization of the repairs to the car at both warranty and retail cost.

With regard to its argument regarding the tax returns, Neal Pope cites *Holman v. Burgess*, 199 Ga. App. 61 (404 SE2d 144) (1991), and argues that financial information cannot be obtained through civil discovery absent an evidentiary showing of a basis for punitive damages. Neal Pope argues that Garlington has produced no evidence to suggest that an intentional misrepresentation was made and that such a showing is essential to a fraud action and to an action under the FBPA.

In *Holman*, the court stated that parties are "not entitled to discover information concerning . . . personal financial resources absent an evidentiary showing (by affidavit, discovery responses, or otherwise) that a factual basis existed for [the] punitive damage claim." Id. at 64. In this case, Garlington demonstrated a per se violation of OCGA § 10-1-393 and, thus, provided evidence that a factual basis existed for the punitive damage claim.[3] Although we recognize that OCGA § 10-1-399 (a) states that "exemplary damages shall be awarded only in cases of intentional violation" and Garlington has not provided evidence of intent on the fraud count, we conclude that the per se violation of the FBPA was a sufficient predicate to allow this discovery request. Accordingly, also recognizing the scope of the discovery here, the trial court did not err. Compare *LeDee v. Devoe*, 225 Ga. App. 620, 624 (2) (484 SE2d 344) (1997).

We have reviewed Neal Pope's argument regarding the line-by-line itemization of vehicle repair costs and conclude that the trial

---

[3] In making this determination, we do not reach any conclusion as to whether punitive damages are warranted in this case. As to this question, we are mindful both of the per se violation of the FBPA and the dearth of cases interpreting OCGA § 40-1-5.

court did not abuse its discretion in this respect.

*Judgment affirmed. Johnson, C. J., Andrews, P. J., Blackburn, P. J., Smith, P. J., Ruffin, Eldridge, Barnes, Miller, Ellington, Phipps and Mikell, JJ., concur.*

DECIDED JULY 12, 2000 

*Fain, Major, Wiley & Brennan, Charles A. Wiley, Jr., Brian H. Alligood,* for appellant.

*Meadows, Ichter & Trigg, Cary Ichter, Steven M. Kushner, Fellows, Johnson & La Briola, Henry D. Fellows, Jr., Stephen L. Cummings,* for appellee.