## A01A2153. CATRETT v. LANDMARK DODGE, INC. et al.
### (560 SE2d 101)

RUFFIN, Judge.

On June 19, 1999, Craig Catrett purchased a 1999 Dodge Dakota truck from Landmark Dodge, Inc. ("Landmark"). Approximately 14 months later, Catrett sued Landmark for fraud, rescission, and violation of the Fair Business Practices Act and the Uniform Deceptive Trade Practices Act, alleging that the dealership fraudulently induced him to purchase the truck by misrepresenting its condition. Landmark moved for summary judgment, which the trial court granted. Catrett appeals, and for reasons that follow, we affirm in part and reverse in part.

Summary judgment is appropriate when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law.[1] On appeal from a grant of summary judgment, a de novo standard of review applies, "and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2] Viewed in this light, the evidence shows that Catrett purchased the truck with approximately 4,700 miles on it. According to Catrett's verified complaint,[3] a Landmark salesman represented that the truck, which had a new car price information sticker inside it, was a "demonstrator" that had been on Landmark's lot "for some time." As defined by Landmark's general manager, "[a] 'demonstrator' is a new car which has been driven by dealership personnel but not yet titled."

Based upon the salesman's representation, Catrett bought the truck. He also purchased an extended warranty, and Landmark prepared a warranty contract that specifically stated that it applied only to new vehicles. On June 19, 1999, Catrett signed the warranty contract, a tag application, a purchase agreement, and a finance agreement. Although the warranty contract referred to "new vehicles," the other three documents indicated that the truck Catrett purchased was "used." The vehicle invoice similarly classified the truck as

---

[1] See *Dover v. Mathis*, 249 Ga. App. 753 (549 SE2d 541) (2001).

[2] Id.

[3] See *Hansen v. Mt. Yonah Scenic Estates Club*, 227 Ga. App. 258, 259 (488 SE2d 732) (1997) (" 'A properly verified pleading containing specific factual allegations must be considered in opposition to affidavits filed in support of a motion for summary judgment and may defeat the motion.' ").

"used," and another form stated that Landmark sold the vehicle "as is."

On May 15, 2000, Catrett took the truck to Landmark for service. At that point, he learned that the truck's front end was misaligned and that a nonfactory weld had broken, rendering the vehicle inoperable and unsafe. After further investigation, he discovered that the truck was not a demonstrator, but had been previously owned and involved in two wrecks, causing over $8,500 in damage. The prior owner sold the truck to Landmark and told the dealership that it had been in a collision.

On June 6, 2000, Catrett's attorney informed Landmark that, because its salesman misrepresented the condition of the truck, Catrett was rescinding the sales contract and tendering the vehicle to the dealership. Landmark refused to accept the truck, and this litigation ensued.

1. Catrett argues that the trial court erred in granting Landmark summary judgment on his fraud claim. We agree.

To establish fraud, Catrett must prove that (1) Landmark represented that the used truck was a "demonstrator"; (2) Landmark knew this representation was false; (3) by making this representation, Landmark intended to induce Catrett to purchase the truck; (4) Catrett justifiably relied on the representation; and (5) Landmark's actions proximately caused Catrett damage.[4] On summary judgment, Landmark did not dispute that Catrett presented sufficient evidence of a knowing and intentional misrepresentation that proximately damaged him. Instead, it focused on the fourth element, arguing that, as a matter of law, Catrett could not show justifiable reliance.

Under Georgia law, a dealer "demonstrator" is a "new" car because — despite its use by the dealership — it has never been part of a retail sale.[5] Catrett claims that Landmark fraudulently represented to him that the truck was a "demonstrator" or "new," when it actually was "used." The evidence clearly shows that the truck had been previously sold and was, in fact, "used."[6] Landmark asserts, however, that Catrett could not justifiably rely on the alleged misrepresentation because various purchase documents characterized the truck as "used" and one form indicated that Landmark sold the vehicle "as is." Nevertheless, other documents at least gave the impression that the truck had not been previously sold. According to Catrett, the manufacturer's new vehicle price sticker was "displayed" inside the truck when he purchased it. Furthermore, during the

---

[4] See *Crown Ford, Inc. v. Crawford*, 221 Ga. App. 881, 884 (3) (473 SE2d 554) (1996).

[5] See *Kondo v. Marietta Toyota*, 224 Ga. App. 490, 492 (2) (480 SE2d 851) (1997); *Toirkens v. Willett Toyota*, 192 Ga. App. 109, 110 (1) (384 SE2d 218) (1989).

[6] See *Kondo*, supra.

purchase transaction, he bought an extended warranty that specifically stated that it applied only to new vehicles.

Given these facts, we refuse to conclude as a matter of law that Catrett could not rely on the salesman's statement that the truck was a "demonstrator." Justifiable reliance generally is a question for the jury, and jury resolution is necessary here.[7] Although several documents referred to the truck as "used," others indicated that it was "new." Based on this evidence, a jury could find that Catrett reasonably believed the car was a demonstrator and that the "used" language simply referred to the truck's use by the dealership.[8]

Landmark's citation to *Castellana v. Conyers Toyota*[9] is not persuasive. In *Castellana*, a car salesman allegedly misrepresented that the credit application for a purchaser's car loan had been approved before the purchaser signed the financing documents. The court found, however, that numerous documents the purchaser read and signed stated, without contradiction, that the credit application had not yet been approved and that the dealership could repossess the vehicle if the application was rejected.[10] Accordingly, the purchaser could not rely on the alleged misrepresentation regarding the credit application.[11] In contrast, all documents involved in Catrett's purchase transaction did not characterize the truck as "used." Some indicated that it was a new vehicle, creating a jury question as to reasonable reliance.

Landmark also argues that a merger clause in the purchase contract "renders [Catrett's] fraud claim deficient as a matter of law." The record shows, however, that Catrett elected to rescind, rather than affirm, the purchase contract. Thus, the merger clause does not defeat his fraud claim.[12] The dealership further claims that Catrett failed to rescind the contract in a timely manner. "The question as to what is a reasonable or proper time within which to rescind a con-

---

[7] See *GCA Strategic Investment Fund v. Joseph Charles & Assoc.*, 245 Ga. App. 460, 465 (3) (537 SE2d 677) (2000); *Reilly v. Mosley*, 165 Ga. App. 479, 481 (1) (301 SE2d 649) (1983).

[8] See *Toirkens*, supra ("While the status of the title is apparently not an element of the statutory definitions of 'new' versus 'used' car, it nevertheless might affect whether the car was merely a 'used demo' or was, in fact, a 'used car' *as those terms are commonly understood by consumers*.") (emphasis supplied).

[9] 200 Ga. App. 161 (407 SE2d 64) (1991).

[10] See id. at 164.

[11] See id. at 165; see also *Doanes v. Nalley Chevrolet*, 105 Ga. App. 846, 847-848 (1) (125 SE2d 717) (1962) (claimant could not justifiably rely on alleged representation that he would receive a greater trade-in allowance on old car because he signed an agreement providing that he would receive a smaller allowance).

[12] See *City Dodge v. Gardner*, 232 Ga. 766, 770 (208 SE2d 794) (1974); cf. *Joseph Charles Parrish, Inc. v. Hill*, 173 Ga. App. 97, 99-100 (5) (325 SE2d 595) (1984) ("Where the purchaser affirms a contract which contains a merger or disclaimer provision and retains the purchased articles, he is estopped from asserting that he relied upon the seller's misrepresentations and his action for fraud must fail.") (punctuation omitted).

tract depends upon the facts of the particular case and is ordinarily a question for the jury."[13] Less than three weeks after Catrett learned about the truck's previous owner, his attorney wrote to Landmark, rescinded the purchase, and tendered the truck to the dealership. Under these circumstances, we cannot find Catrett's rescission untimely as a matter of law.[14]

Genuine issues of material fact remain as to Catrett's fraud allegation. Thus, the trial court improperly awarded Landmark summary judgment on this claim.

2. The trial court similarly erred in granting Landmark summary judgment on Catrett's claim under the Fair Business Practices Act[15] ("FBPA"). The FBPA proscribes "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."[16] The legislation lists various activities that qualify as "unfair or deceptive acts or practices," including "[r]epresenting that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand."[17]

"A single instance of an unfair or deceptive act or practice is a sufficient predicate upon which to base a claim for damages [under the FBPA] if the public consumer interest would be served thereby."[18] To come within the FBPA, therefore, the deceptive activity must take place in the context of the consumer marketplace.[19] As we have found, " '[o]ffering a product for sale by opening one's door to the general public should trigger the prohibitions of the act if some deceptive act or practice [is] involved.' "[20] The FBPA does not apply, however, to transactions that are essentially private.[21]

Landmark argues that the FBPA does not govern Catrett's truck purchase because, in its view, the transaction was private or outside the consumer marketplace. It relies heavily on our decision in *Medley v. Boomershine Pontiac-GMC Truck.*[22] According to Landmark, *Medley* establishes that "misrepresentation of a used car as a 'demonstra-

---

[13] (Punctuation and emphasis omitted.) *Flair Fashions v. SW CR Eisenhower Drive, Inc.*, 207 Ga. App. 78, 79 (427 SE2d 56) (1993); *Newton v. Burks*, 139 Ga. App. 617, 618 (3) (229 SE2d 94) (1976).

[14] See id. at 618-619; see also *Neal Pope, Inc. v. Garlington*, 245 Ga. App. 49, 53-54 (2) (537 SE2d 179) (2000).

[15] OCGA § 10-1-390 et seq.

[16] OCGA § 10-1-393 (a).

[17] OCGA § 10-1-393 (b) (6); see also OCGA § 10-1-393 (b) (7) (unfair and deceptive practices also include "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another").

[18] (Punctuation omitted.) *Crown Ford*, supra at 883 (1).

[19] See *Regency Nissan v. Taylor*, 194 Ga. App. 645, 646 (2) (391 SE2d 467) (1990).

[20] Id. at 646-647 (2).

[21] See *Borden v. Pope Jeep-Eagle*, 200 Ga. App. 176, 178 (1) (407 SE2d 128) (1991).

[22] 214 Ga. App. 795 (449 SE2d 128) (1994).

tor' fails to state an actionable claim under the FBPA," undermining Catrett's FBPA allegations. We disagree and find *Medley* factually distinguishable. Not only did the dealership salesman in *Medley* misrepresent a used vehicle as a demonstrator, he kept part of the purchaser's down payment for his own use, did not disclose to the dealership that the purchaser had tendered a trade-in vehicle, and forged the purchaser's signature on a bill of sale. Based on these activities, the dealership terminated him. As described in *Medley,* the salesman's actions were "personal to him and outside the scope of his employment."[23] In short, this rogue salesman engaged in an essentially private transaction that occurred outside the dealership's general business and did not impact the consumer marketplace.[24]

No similar facts exist here. The record shows that Landmark opened its doors to sell vehicles to the general public. According to Catrett, he went to the dealership, expressed interest in a truck on Landmark's lot, received false information about the truck's condition, and, based on that information, consummated the sale. We refuse to characterize this transaction as private or outside the consumer marketplace.[25]

Furthermore, the evidence raises genuine issues of material facts regarding each element of Catrett's FBPA claim. " 'A private FBPA claim has three essential elements: a violation of the act, causation, and injury.' "[26] Viewed favorably to Catrett, the record shows that although Landmark knew the truck was used, a salesman told him that it was a "demonstrator," which is a new car under Georgia law. Catrett asserts that he relied on this representation in making the purchase, and, as we found in Division 1, a jury question remains as to reasonable reliance.[27] Moreover, given that Catrett thought he

---

[23] Id. at 797 (3).

[24] See id. at 796 (2); see also *Borden,* supra at 178 (car dealership's alleged failure to honor simple interest installment loan agreement with purchaser did not affect consumer marketplace because dealership did not generally use this type of loan agreement and entered the agreement only at purchaser's insistence).

[25] See *Crown Ford,* supra at 883 (1) ("A dealer's sale of a used car with an odometer reflecting less than actual mileage is an act which falls within the ambit of the FBPA because it takes place 'within the context of the consumer marketplace.' "); *Miles Rich Chrysler-Plymouth v. Mass,* 201 Ga. App. 693, 697 (3) (a) (411 SE2d 901) (1991) (physical precedent only) (car dealership's misrepresentations that vehicle had been ordered for purchaser and would arrive soon "clearly come within the FBPA requirement that the offensive activity have taken place within the context of the consumer marketplace"); *Regency Nissan,* supra at 647 (2) (dealership's sale of stolen vehicle to claimant, who thought he was purchasing a used vehicle, took place "within the context of the consumer marketplace"); see also OCGA § 10-1-391 (a) (FBPA should be liberally construed "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state").

[26] *Crown Ford,* supra.

[27] See id. at 884 (1) ("[J]ustifiable reliance is an essential element of an FBPA claim.").

was buying a demonstrator vehicle with 4,700 miles, but actually received a used truck that had been in two significant collisions, factual questions remain regarding injury. Accordingly, the trial court erred in granting Landmark summary judgment on the FBPA claim.[28]

3. We agree with the trial court, however, that Catrett's Uniform Deceptive Trade Practices Act[29] ("UDTPA") claim cannot survive summary judgment. Under the UDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."[30]

Like the FBPA, the UDTPA characterizes as deceptive a representation "that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand."[31] Unlike the FBPA, however, injunctive relief is the only remedy permitted by the UDTPA.[32] By definition, an injunction provides relief from *future* wrongful conduct: "[t]he remedy by injunction is to prevent, prohibit or protect from future wrongs and does not afford a remedy for what is past."[33] Catrett contends that Landmark's 1999 misrepresentation injured him, and he now seeks to "enjoin Landmark [from] continuing its Deceptive Trade Practices." Yet, he has not presented any evidence — or even alleged — that he "is likely to be damaged" by these trade practices in the future.

Damage allegedly caused by the 1999 misrepresentation cannot be remedied through an injunction. To survive summary judgment, Catrett had to raise a factual question about the likelihood of some future wrong.[34] Because he failed to do so, the trial court properly granted Landmark summary judgment on the UDTPA claim.[35]

---

[28] See *Billy Cain Ford Lincoln Mercury v. Kaminski*, 230 Ga. App. 598, 601-602 (3) (496 SE2d 521) (1998); *Crown Ford*, supra at 883-884; *Miles Rich Chrysler-Plymouth*, supra at 697.

[29] OCGA § 10-1-370 et seq.

[30] OCGA § 10-1-373 (a).

[31] OCGA § 10-1-372 (a) (6); see also OCGA § 10-1-372 (a) (7) (deceptive practices include representing "that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another").

[32] See *Friedlander v. HMS-PEP Products*, 226 Ga. App. 123, 124 (1) (a) (485 SE2d 240) (1997).

[33] (Punctuation omitted.) *Hunter v. George*, 265 Ga. 573, 575 (4) (458 SE2d 830) (1995).

[34] See id.; OCGA § 10-1-373 (a); see also *Robinson v. Toyota Motor Credit Corp.*, 315 Ill. App.3d 1086, 1098 (735 NE2d 724) (2000) (construing provisions of Illinois Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 et seq. (West 1996), which is similar to Georgia's UDTPA, court stated: "[w]hile the primary focus of the Uniform Act is on actions between competitors, a cause of action can be stated by an individual consumer where that consumer can allege facts that indicate he is likely to be damaged by defendant's conduct in the future").

[35] See OCGA § 10-1-373 (a).

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 11, 2002 —

*Power & Westbury, Warren R. Power, LeAnne P. Cooper*, for appellant.

*Schulten, Ward & Turner, David L. Turner, Lea B. Kirschner*, for appellees.